# I. M. DARNELL & SON COMPANY v. CITY OF MEMPHIS.

## IN ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

### No. 75.   Argued December 16, 1907.—Decided January 20, 1908.

While a State may tax property which has moved in the channels of inter-
state commerce after it is at rest within the State and has become com-
mingled with the mass of property therein, it may not discriminate
against such property by imposing upon it a burden of taxation greater
than that imposed upon similar domestic property.

The exemption from taxation in ch. 258 of the acts of Tennessee of 1903,
of growing crops and manufactured articles from the produce of the
State, in the hands of the manufacturer, is a discrimination against similar
property, the product of the soil of other States, brought into that State,
and is therefore a direct burden upon interstate commerce and repugnant
to the commerce clause of the Constitution of the United States.

Quære, and not decided, whether such provision of exemption is valid under
the equal protection clause of the Fourteenth Amendment.

116 Tennessee, 424, reversed.

THE facts are stated in the opinion.

*Mr. Dent Minor*, with whom *Mr. C. W. Metcalf*, *Mr. C. H.
Trimble* and *Mr. H. B. Anderson* were on the brief, for plain-
tiffs in error:

Logs in the hands of a manufacturer awaiting conversion
into lumber and the lumber made therefrom in the hands of
the same manufacturer are within the exemptions of the
Tennessee constitution, when cut from Tennessee soil. *Bene-
dict* v. *Davidson Co.*, 110 Tennessee, 191.

By exempting from taxation such property when taken from
its own soil, the State has precluded itself from taxing similar
property taken from the soil of other States, as a State may
not, under the Federal Constitution, so discriminate in favor
of the products of its own soil as against the products or against
citizens of other States. *Welton* v. *Missouri*, 91 U. S, 275;
*Walling* v. *Michigan*, 116 U. S. 446.

VOL. CCVIII—8

A Tennessee corporation or citizen is as much entitled to complain of the discrimination just mentioned as a foreign corporation or a non-resident. The evil complained of is the discrimination against persons handling property from other States- and affects domestic and foreign corporations alike.

The complainant, a corporation, while not a citizen, is a "person" within the meaning of the state and Federal Constitutions and is entitled to the protection guaranteed to persons by the Fourteenth Amendment. - *Dugger* v. *Ins. Co.*, 95 Tennessee, 250; *Railway Co.* v. *Mackay*, 127 U. S. 205; *Santa Clara* v. *Railway*, 118 U. S. 394.

*Mr. Marion G. Evans*, with whom *Mr. William H. Carroll* and *Mr. Thomas H. Jackson* were on the brief, for defendants in error:

The property is not protected by the interstate commerce clause, as it was not in transit, but had arrived at its destination. It had been manufactured, or was in process of manufacture into articles of various kinds, and had become a part of the general property in the State. *American Steel Wire Co.* v. *Speed*, 110 Tennessee, 546; *Austin* v. *Tennessee*, 179 U. S. 343; *Brown* v. *Houston*, 114 U. S. 622; *May* v. *New Orleans*, 178 U. S. 496; *Woodman* v. *The State*, 2 Swan, 354; *Machine Co.* v. *Cage*, 9 Baxter, 519; *Naff* v. *Russell*, 2 Cold. 36.

It will be observed that most of the cases cited by plaintiff in error are cases where a license tax had been charged against a non-resident, or where foreign products had been specifically taxed as such. See *Walling* v. *Michigan*, 116 U. S. 446; *Weber* v. *Virginia*, 103 U. S. 344; *Welton* v. *Missouri*, 91 U. S. 275, where these questions are discussed.

The question here is not a tax, but an exemption from taxation. The property in question has become amalgamated with the general property in the State in the hands of a resident Tennessee corporation. This is not a complaint by a non-resident, whose rights have been denied, or whose property has been unequally taxed.

Mr. Justice White delivered the opinion of the court.

Article 2 of the Tennessee constitution of 1870 provides:

"Sec. 28. All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held or used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer and his immediate vendee.

*    *    *    *    *    *    *    *

"Sec. 30. No article manufactured of the produce of this State shall be taxed otherwise than to pay inspection fees."

By chapter 258, p. 632, of the acts of Tennessee for 1903 it was, among other things, provided:

"Sec. 1. That all property, real, personal and mixed, shall be assessed for taxation for State, county and municipal purposes, except such as is declared exempt in the next section.

"Sec. 2. That the property herein enumerated, and none other, shall be exempt from taxation. . . . Sub-sec. 5. All growing crops of whatever nature and kind, the direct product of the soil of this State in the hands of the producer and his immediate vendee, and manufactured articles from the produce of the State in the hands of the manufacturer."

In the recent case of *Benedict* v. *Davidson County*, 110 Tennessee, 183, 191, the Supreme Court of Tennessee held as follows:

"We are of opinion that, under the facts in this record, the logs upon the yard, in the hands of the mill-operating manufacturer and his property, and lumber, rough and smooth, cut by him from such logs grown on Tennessee soil, are articles manufactured from the produce of the State, and exempt under the provisions of section 30, article 2, of the constitution; and the demurrer was therefore properly overruled, and complainants, under the allegations of their bill, are entitled

to recover back the taxes paid the State, and to perpetually enjoin the taxes assessed by the county and city."

For more than three years prior to January 30, 1905, the I. M. Darnell & Son Company, a corporation of Tennessee, was domiciled in Memphis, in that State, and there owned and operated a lumber mill. Shortly prior to the date just named, pursuant to chapter 366 of the acts of Tennessee for 1903 (Acts Tenn., 1903, pp. 1097–1101), the value of the personalty of the Darnell Company was assessed for taxation by the city of Memphis at $44,000. Of this amount $19,325 was the value of logs cut from the soil of States other than Tennessee, which the company had brought into Tennessee from other States and were held by the company as the immediate purchaser or vendee awaiting manufacture into lumber, or consisted of lumber already manufactured by the company from logs which had been acquired and brought into the State from other States, as above mentioned, and all of which lumber was lying in the mill yard of the company awaiting sale. The Darnell Company protested against this assessment, asserting that it was not liable to be taxed on said sum of $19,325, the value of the property owned by it as the immediate purchaser of logs brought from other States, or lumber, the product thereof. The ground of the protest was that the property represented by the valuation in question could not be taxed without discriminating against it, as like property, the product of the soil of Tennessee, was exempt from taxation under the constitution and laws of that State, and therefore to tax its said property would violate the commerce clause, section 8, Article I, of the Constitution and the equal protection clause of the Fourteenth Amendment.

The protest was overruled. Thereupon threat of distress and sale was made by the collecting officer, unless the taxes on all the property were paid. On January 30, 1905, the Darnell Company filed in the Chancery Court of Shelby County its bill against the city of Memphis and the collecting officer to enjoin the enforcement of the tax as to the logs brought in from other

States, and the lumber, the product thereof as above stated, on the ground of the repugnancy of the tax to the commerce clause and the Fourteenth Amendment, because of the foregoing alleged discrimination.. At the same time it paid into court the amount of the taxes which were not in dispute. The sufficiency of the bill was challenged by demurrer, asserting in substance that the assessment complained of did not constitute an unlawful discrimination and was not repugnant either to the constitution of Tennessee or of the United States. Subsequently, by leave of court, an additional demurrer was filed, which, in effect, asserted that, as the plaintiff company was a citizen of Tennessee, it could not be heard to complain of the tax, and that the enforcement of the same was not repugnant to the Fourteenth Amendment, and that as the property sought to be taxed was not in transit or awaiting shipment out of the State, but on the contrary had reached its destination and was in the hands of the consignee and owner, who was a citizen of Tennessee, and had become a part of the general property of the State, the assessing of the same for taxation was not an interference with commerce between the States. The chancellor overruled the demurrer and decided the case in favor of the Darnell Company, because the court, as stated in the decree, was of the opinion "that the tax in controversy is in contravention of the rights of complainant as guaranteed by the Constitution of the United States, and particularly the interstate commerce clause thereof, and the Fourteenth Amendment thereof, as set out in the complainant's original bill."

On appeal the Supreme Court of Tennessee, in considering the demurrer, held the disputed tax not to be repugnant to the Constitution of the United States, and reversed the decree of the Chancery Court. 116 Tennessee, 424. The court entered a decree against the Darnell Company and H. D. Minor, the surety on the appeal bond, for the amount of the disputed tax, penalty and interest. The company and Minor prosecute this writ of error.

As all the assignments of error relied on for reversal are but the counterpart of the reasons which led the court below to the conclusion that the tax was not repugnant to the Constitution of the United States, we come at once to consider the affirmative conceptions on that subject expressed in the opinion of the court below, as affording the most direct method of disposing of the issues for decision. Those conceptions are of a twofold character, one relating to the commerce clause and the other to the equal protection clause of the Fourteenth Amendment.

The court in its opinion conceded that the property embraced in the assessment complained of was purchased by the complainant in and brought from other States, or consisted of lumber produced from logs so brought into Tennessee, and that property of like character would not be subject to taxation under the state law if it had been produced from the soil of Tennessee. But the levy of the tax was held not to be a direct burden upon interstate commerce, and hence not repugnant to the commerce clause of the Constitution of the United States, as a result of the interpretation which the court affixed to previous decisions of this court concerning the operation of the commerce clause of the Constitution and the right of a State to impose a tax, even if discriminatory in character, upon property coming from other States, after such property had come at rest within a State and been commingled with the mass of property therein. The court, after stating that the provision of the state constitution which authorized the exemption of property produced from the soil of Tennessee had its inception in the "first constitution of this State, adopted on February 6, 1796, and hence formed a part of the fundamental law of the State, when it was admitted by the act of Congress, approved June 1, 1796, ch. 67, 1 Stat. 491," proceeded to state its reasons for holding that the discriminatory tax was not repugnant to the commerce clause, as follows (p. 429):

"1. Upon the averments of the bill it is manifest that, although the property sought to be taxed was purchased by

complainant in and brought from another State, nevertheless it had become divested of any connection with commerce between the States and was at rest, commingled with and merged into the general mass of property of this State, awaiting sale to purchasers.

"Although the origin of property may be in another State, nevertheless, when it is brought into this State and here merged into the mass of general property, it at once becomes subject to the tax laws of this State. *American Steel & Wire Co.* v. *Speed*, 110 Tennessee, 524–546, 75 S. W. Rep. 1037, 100 Am. St. Rep. 814.

"This principle was recognized and the holding of this court affirmed by the Supreme Court of the United States (*American Steel & Wire Co.* v. *Speed*, 192 U. S. 500), and in harmony with other adjudications of that court. *Woodruff* v. *Parham*, 8 Wall. 123; *Brown* v. *Houston*, 114 U. S. 622; *May* v. *New Orleans*, 178 U. S. 496; *Emert* v. *Missouri*, 156 U. S. 296.

"In *Kehrer* v. *Stewart*, 197 U. S. 60, 65, the Supreme Court of the United States, in substance, declared that it can make no difference whence the property came or to whom it should be ultimately sold, because upon its arrival in the State where it is offered for sale and intermingled with the general property of the State, it becomes and is a part of the taxable property of the State."

As we are of opinion that the question for decision is clearly foreclosed by prior decisions of this court, which demonstrate that the court below misconceived the rulings of this court upon which it relied, we do not stop to analyze the reasoning of the court considered as an original proposition, but come at once to test its correctness by making a brief review of the decided cases relied upon by the court below and others not referred to which relate to the subject, and which are controlling.

As a prelude to a review of the cases referred to, we observe that while it is undoubted that it has been settled that where property which has moved in the channels of interstate com-

merce is at rest within a State and has become commingled with the mass of property therein, it may be taxed by such State without thereby imposing a direct burden upon interstate commerce, that doctrine, as expounded in the decided cases, including those relied upon by the court below, has always expressly excluded the conception that a State could, without directly burdening interstate commerce, discriminate against such property by imposing upon it a burden of taxation greater than that levied upon domestic property of a like nature.

The leading cases announcing the doctrine that a State may tax property which had moved in the channels of interstate commerce, when such property had become at rest therein, even before sale in the original package, are *Woodruff* v. *Parham*, 8 Wall. 123, and *Brown* v. *Houston*, 114 U. S. 622. But in both those cases it was sedulously pointed out that the power which was thus recognized did not, and could not, include the authority to burden the property brought from another State with a discriminating tax. In *American Steel Wire Co.* v. *Speed*, 192 U. S. 500, 519, where the doctrine of *Woodruff* v. *Parham* and *Brown* v. *Houston* was reviewed and restated, it was pointed out that to prevent the levy of a tax upon property brought from another State, even after it had come at rest within a State, from being a direct burden upon interstate commerce, property so situated must be taxed "without discrimination, like other property situated within the State."

The statements just made adequately point out the misconception as to the rulings of this court upon which the court below placed its conclusion, since the court took no heed of the express declaration concerning the nullity of any discriminating tax made in the cases which the court relied on. The importance of the subject, however, and the statement made by the court below as to the long existence in Tennessee of the tax exemption in favor of the products of the soil of Tennessee, leads us to a brief review of other decided cases in this court which have long since clearly established the want

of power in a State to discriminate by taxation in any form against property brought from other States.

In *Guy* v. *Baltimore*, 100 U. S. 434, the invalidity was adjudged of a municipal ordinance of the city of Baltimore which established rates of wharfage to be charged on vessels resorting to or lying at, "landing, depositing or transporting goods or articles other than the productions of this State, on any wharf or wharves belonging to said mayor and city council, or any public wharf in the said city, other than the wharves belonging to or rented by the State." The principle, settled by earlier decisions, which were referred to (*Woodruff* v. *Parham*, 8 Wall. 123; *Hinson* v. *Lott*, 8 Wall. 148, and *Ward* v. *Maryland*, 12 Wall. 418), was reaffirmed, the court saying (pp. 439, 442):

"In view of these and other decisions of this court, it must be regarded as settled that no State can, consistently with the Federal Constitution, impose upon the products of other States, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory. If this were not so, it is easy to perceive how the power of Congress to regulate commerce with foreign nations and among the several States could be practically annulled, and the equality of commercial privileges secured by the Federal Constitution to citizens of the several States be materially abridged and impaired

  \*      \*      \*      \*      \*      \*      \*      \*

"The State, it will be admitted, could not lawfully impose upon such cargo any direct public burden or tax because it may consist, in whole or in part, of the products of other States. The concession of such a power to the States would render wholly nugatory all National control of commerce among the States, and place the trade and business of the country at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products

of particular States. But it is claimed that a State may em-
power one of its political agencies, a mere municipal corpora-
tion representing a portion of its civil power, to burden inter-
state commerce by exacting from those transporting to its
wharves the products of other States wharfage fees, which it
does not exact from those bringing to the same wharves the
products of Maryland. The city can no more do this than it
or the State could discriminate against the citizens and products
of other States in the use of the public streets or other public
highways."

In *Webber* v. *Virginia*, 103 U. S. 344, a license statute of the
State of Virginia was held to be a regulation of commerce
and invalid because the tax was made to depend upon the
foreign character of the articles dealt in; that is, upon their
having been manufactured without the State. The court
said (p. 350):

"If by reason of their foreign character the State can impose
a tax upon them or upon the person through whom the sales
are effected, the amount of the tax will be a matter resting
in her discretion. She may place the tax at so high a figure
as to exclude the introduction of the foreign article and pre-
vent competition with the home product. It was against
legislation of this discriminating kind that the framers of the
Constitution intended to guard when they vested in Con-
gress the power to regulate commerce among the several
States."

In *Walling* v. *Michigan*, 116 U. S. 446, an act of the State
of Michigan, which imposed a tax or duty on persons who, not
having their principal place of business within the State, en-
gaged in the business of selling, or of soliciting the sale of cer-
tain described liquors, to be shipped into the State, was held
to be repugnant to the commerce clause, as being "a dis-
criminating tax levied against persons for selling goods brought
into the State from other States or countries." The court
said (p. 455):

"A discriminating tax imposed by a State operating to the

disadvantage of the products of other States when introduced into the first-mentioned State is, in effect, a regulation in restraint of commerce among the States, and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States."

And in the course of the opinion, referring to state decisions announcing a want of authority in the several States to prescribe different regulations in relation to the commerce in certain articles, dependent upon the State from which they were brought, the court thus referred to a decision of the Supreme Court of Missouri (p. 457):

"In *State* v. *North*, 27 Missouri, 464, where an act of Missouri imposed a tax upon merchants for all goods purchased by them, except such as might be the growth, produce, or manufacture of that State; and manufactured articles, the growth or produce of other States, it was held by the Supreme Court of that State that the law was unconstitutional and void. The court says: 'From the foregoing statement of the law and facts of this case it will be seen that it presents the question of the power of the States, in the exercise of the right of taxation, to discriminate between products of this State and those manufactured in our sister States.' And after an examination of the causes which led to the adoption of the Federal Constitution, one of the principal of which was the necessity for the regulation of commerce and the laying of imposts and duties by a single government, the court says: 'But, whatever may be the motive for the tax, whether revenue, restriction, retaliation or protection of domestic manufactures, it is equally a regulation of commerce, and in effect an exercise of the power of laying duties on imposts, and its exercise by the States is entirely at war with the spirit of the Constitution, and would render vain and nugatory the power granted to Congress in relation to these subjects. Can any power more destructive to the union and harmony of the States be exercised than that of imposing discriminating taxes or duties on imports from other States? Whatever may be the motive for such

taxes, they cannot fail to beget irritation and to lead to re-
taliation; and it is not difficult to foresee that an indulgence
in such a course of legislation must inflame and produce a
state of feeling that would seek its gratification in any meas-
ures regardless of the consequences.' "

The principle applied in the foregoing cases was also given
effect in *Minnesota* v. *Barber*, 136 U. S. 313; *Brimmer* v. *Reb-
man*, 138 U. S. 78, and *Voight* v. *Wright*, 141 U. S. 62, and
so-called inspection laws of various States were held to be
repugnant to the commerce clause of the Constitution because
of their discriminating character. In *New York* v. *Roberts*,
171 U. S. 658, while the tax there considered, imposed by
New York upon a corporation of another State, was sustained
as a valid tax upon the franchise of doing business as a cor-
poration in New York, the court reaffirmed the authority of
its former decisions declaring the invalidity of all taxes of a
discriminating character levied by a State upon the products
of other States.

In this connection we excerpt from the opinion in *Phila-
delphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, state-
ments which directly relate to the subject in hand and which
conclusively demonstrate the unsoundness of the proposition
which the court below upheld, that is, that the commerce clause
of the Constitution does not protect property brought from
another State from being discriminated against after it has
arrived and been commingled with the mass of property within
the State of its destination. Commenting upon the reasoning
of the opinion in *State Tax on Railway Gross Receipts*, 15 Wall.
284, the court said (122 U. S. 341):

"When the latter (imported goods) become mingled with
the general mass of property in the State, they are not followed
and singled out for taxation as imported goods, and by reason
of their being imported. If they were, the tax would be as
unconstitutional as if imposed upon them whilst in the original
packages. When mingled with the general mass of property
in the State they are taxed in the same manner as other prop-

erty possessed by its citizens, without discrimination or partiality. We held in *Welton* v. *Missouri*, 91 U. S. 275, that goods brought into a State for sale, though they thereby become a part of the mass of its property, cannot be taxed by reason of their being introduced into the State or because they are the products of another State. To tax them as such was expressly held to be unconstitutional. The tax in the present case is laid upon the gross receipts for transportation as such. Those receipts are followed and caused to be accounted for by the company, dollar for dollar. It is those specific receipts, or the amount thereof (which is the same thing), for which the company is called upon to pay the tax. They are taxed not only because they are money, or its value, but because they were received for transportation. No doubt a ship-owner, like any other citizen, may be personally taxed for the amount of his property or estate, without regard to the source from which it was derived, whether from commerce or banking, or any other employment. But that is an entirely different thing from laying a special tax upon his receipts in a particular employment. If such a tax is laid, and the receipts taxed are those derived from transporting goods and passengers in the way of interstate or foreign commerce, no matter when the tax is exacted, whether at the time of realizing the receipts or at the end of every six months or a year, it is an exaction aimed at the commerce itself, and is a burden upon it and seriously affects it."

As there can be no doubt within the principles so clearly settled by the decided cases, to which we have referred, that the disputed tax, which the court below sustained, was a direct burden upon interstate commerce since the law of Tennessee in terms discriminated against property the product of the soil of other States brought into the State of Tennessee by exempting like property when produced from the soil of Tennessee, it follows that the court below erred in deciding the tax to be valid, without reference to the reasoning indulged in by it concerning the application of the equal protection clause of the

Fourteenth Amendment. The judgment below must therefore be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*