DIEHL & LORD *v.* ROMANS HAILEY, COUNTY COURT
CLERK.

(*Nashville.* December Term, 1917.)

1. **COMMERCE.** Interstate commerce. Privilege taxes. Sale of
alcoholic beverages.

Acts 1917, chapter 70, imposing a privilege tax on wholesale deal-
ers in foreign-made nonintoxicating beverages containing alcohol,
and on domestic manufacturers of such drinks, is unconstitution-
al within Const. U. S. article 1, section 8, sub-section 3, as
imposing a burden on interstate commerce. (*Post, pp.* 468-470.)

Acts cited and construed: Acts 1917, ch. 70.

Case cited and distinguished: I. M. Darnell & Son Co. v. City of
Memphis, 208 U. S., 113.

2. **COMMERCE.** Interstate commerce. Taxes.

Mere fact that tax was imposed on manufacture in the State of
nonintoxicating alcoholic beverages larger than that imposed
on wholesalers of such drinks made outside the State does not
justify the classification in Acts 1917, chapter 70, and the omis-
sion therein to tax wholesalers of the domestic product. (*Post,
pp.* 470, 471.)

Cases cited and approved: Welton v. Missouri, 91 U. S., 275;
Guy v. Baltimore, 100 U. S., 434; Webber v. Virginia, 103 U. S.,
344.

3. **COMMERCE.** Interstate commerce. Taxes.

Conceding that only foreign-made nonintoxicating alcoholic bev-
erages were ever in the State, Acts 1917, chapter 70, imposing
tax only on wholesalers of such foreign-made beverages, is in-
valid as an imposition on interstate commerce. (*Post, p.* 271.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson
County.—M. T. BRYAN, Special Chancellor.

HILL McALISTER, for appellant.

M. P. O'CONNOR and NORMAN FARRELL, for appellee.

MR CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant, Diehl, is a wholesale merchant doing business at Nashville, Tenn., under the trade-name of Diehl & Lord. In course of his business he purchased from time to time certain carload lots of "Bevo" of Anheuser-Busch Brewing Company, located at St. Louis, Mo. When a carload arrives his custom is to open the car and transfer the cases of "Bevo," each containing two dozen bottles, to his warehouse, where it rests until it is resold by him, in the original unbroken cases, to his customers, who are dealers in different portions of the State.

In 1917 the legislature of the State imposed a privilege tax: "Wholesalers or jobbers or bottlers of foreign made nonintoxicating beverage drinks containing alcohol or hops, or cereal, each, per annum, $200." Laws 1917, chapter 70.

At the same time there was imposed a tax on:

"Manufacturers of nonintoxicating beverage drinks containing alcohol, or hops, or cereal, each, $300." "Bevo" falls within the description given; and therefore the defendant clerk sought to collect this tax from complainant as a wholesale dealer engaged in its sale, demanding $200 for the State and $200 for Davidson county, and, on complainant's refusal to pay,

he caused a distress warrant to issue. Under this threatened compulsion complainant, as required by statute, paid the State's demand under protest, and filed his bill to recover the sums so paid, and to enjoin the enforcement of the county's demand, charging the invalidity of the tax on the ground that it was a violation of the interstate commerce clause of the federal Constitution—subsection 3 of section 8 of article 1 of that instrument. The defendant contested the charge of unconstitutionality. The chancellor sustained complainant's contention, and the defendant appealed.

The chancellor reached the correct conclusion. The tax is in violation of the interstate commerce clause of the federal Constitution, imposing, as it does, a discriminatory burden on goods shipped into this State from a foreign State, on the ground of their foreign origin, since to impose a privilege tax on a dealer in such goods simply because they were shipped here from another State is in its practical effect a tax on the goods themselves. It is immaterial, in respect of the particular question before us, that the goods had come to a rest within this State, and were held in store for sale to other dealers, from time to time, as opportunity might offer. The latter fact is important in determining whether any tax at all can be imposed, even though equal and uniform with that on similar articles within the State, inasmuch as no tax whatever can be levied upon the mere introduction of an article of merchandise from a foreign

State, because such tax would necessarily operate as a direct burden on interstate commerce; whereas such equal taxation can be imposed after the merchandise has come to a rest in the State, and is held here for sale. But a tax on such goods, based on their foreign origin, placing no equivalent tax on other goods of the same kind produced in the State, is a tax discriminating against the foreign-source goods, and is unlawful no matter at what stage between the producer and the consumer it may be imposed. *I. M. Darnell & Son Co.* v. *City of Memphis,* 208 U. S., 113, 28 Sup. Ct., 247, 52 L. Ed., 413, and cases cited. Its direct and unescapable effect would be to discourage dealing in such goods, and hence ultimately prevent the introduction of them into the State. To sanction such legislation would result in justifying the building a tariff wall around the State in violation of both the letter and the spirit of the interstate commerce clause—in our judgment one of the wisest and most beneficent provisions of our federal Constitution; on the maintenance of which in truth depends the very existence of our country, as pointed out by Mr. Justice MILLER in the following excerpt from his Lectures on the Federal Constitution. Said that very able judge:

"Notwithstanding for nearly one hundred years we have had in the federal Constitution that Congress shall have power to regulate commerce among the several States, there are at this hour upon the statute books of almost every State laws violating that pro-

vision; and there is no doubt that if that clause were removed tomorrow, this Union would fall to pieces, simply by reason of the struggles of each State to make the property owned in other States pay its expenses. It was this tendency of each State to support its government out of taxes levied upon the property of other States, or on the produce or merchandise which must go through one State or another, that more than any other one thing compelled the formation of the present Constitution." Lectures. p. 81.

This a sound and weighty observation.

But it is said that the tax imposed does not effect a discrimination against foreign goods, because the same statute imposes a larger privilege tax, $300, on the manufacture of similar goods within this State. This argument does not meet the difficulty, because its only basis is the unsound proposition that a privilege tax levied on one occupation is a true criterion by which to judge of another privilege tax levied upon another and distinct occupation, in respect of the burden which the latter will impose upon the goods with which the business of each is concerned. The basis is inadmissible; it furnishes no true measure, because the things to be compared are each uncertain, nor do they belong to the same class, nor does either fall within a class represented by the other. It does not appear how many wholesale dealers of the foreign goods there are in the State, nor how many factories are operating within the State, making goods of a similar kind, nor is it possible to forecast how many of

either there will be within any given period. On this ground alone, to say nothing of other reasons suggested, it is impossible to determine that the burden imposed on local production of similar goods will offset the burden which the tax in question imposes on foreign goods. In truth the whole inquiry is irrelevant. The fact that the tax is imposed solely on wholesale dealers in the foreign goods, and no tax the same in kind and amount on wholesale dealers in similar goods of local origin, is sufficient to stamp it as discriminatory, and unconstitutional. *Welton* v. *Missouri,* 91 U. S., 275, 23 L. Ed., 347; *Guy* v. *Baltimore,* 100 U. S., 434, 25 L. Ed., 743; *Webber* v. *Virginia,* 103 U. S., 344, 26 L. Ed., 565.

We go yet further, and hold that even if no goods of similar kind were manufactured or owned in this State, a tax could not be sustained against these goods, or one dealing in them, based simply on the ground that they were of foreign origin. That would be a classification purely arbitrary, without the slightest support in reason or foundation in common sense; and this, because no State has the power, under our constitutional system, to exclude or even discourage the introduction of foreign goods into its borders. So, the classification is an idle one, and as useless as if it had never been made. Therefore it can furnish no basis for the levying of an occupation or other tax. Let the judgment be affirmed, with costs.