FULTON CORPORATION, PLAINTIFF v. BETSY Y. JUSTUS, SECRETARY OF
REVENUE, DEFENDANT

No. 9210SC15

(Filed 15 June 1993)

1. **Constitutional Law § 51 (NCI4th)— intangibles tax—standing of taxpayer to challenge constitutionality**

A local taxpayer owning shares of corporate stock had standing to challenge the constitutionality of the North Carolina intangibles tax statute on the ground that the tax violates the Commerce Clause of the U.S. Constitution.

**Am Jur 2d, Constitutional Law § 202.**

2. **Taxation § 32 (NCI3d)— intangibles tax on corporate stock— taxable percentage provision—violation of Commerce Clause**

The statute levying an intangibles tax on ownership of corporate stock, N.C.G.S. § 105-203, facially violates the Commerce Clause of the U.S. Constitution because the taxable percentage provision of the statute requires shareholders of out-of-state corporations to pay intangibles taxes on a higher percentage of the value of shares than shareholders of corporations operating solely in North Carolina and indirectly encourages the development of local business by placing a greater burden on economic activities occurring outside North Carolina than is placed on similar activities within this state.

**Am Jur 2d, State and Local Taxation §§ 244-253.**

3. **Taxation § 32 (NCI3d)— intangibles tax on corporate stock— taxable percentage provision—not valid compensating tax**

The facially discriminatory taxable percentage provision of the statute levying an intangibles tax on ownership of corporate stock is not a valid compensating tax because there is no substantially equivalent event justifying the imposition of the intangibles tax at a higher percentage on the stock of out-of-state corporations than on the stock of in-state corporations.

**Am Jur 2d, State and Local Taxation §§ 244-253.**

4. **Taxation § 32 (NCI3d) — intangibles tax on corporate stock — severability of unconstitutional provision — prospective application of revised statute**

The unconstitutional taxable percentage provision of N.C.G.S. § 105-203 is severable from the remainder of the statute. Therefore, the Court of Appeals will excise language in the statute stating "less the proportion of the value that is equal to: (1) In the case of a taxpayer that is a corporation, the proportion of the dividends upon the stock deductible by the taxpayer in computing its income tax liability under G.S. 105-130.7 without regard to the fifteen thousand dollar ($15,000) limitation under G.S. 105-130.7 . . . ." As rewritten, the statute levies an intangibles tax upon "[a]ll shares of stock . . . owned by residents of this state," and plaintiff corporation, a resident owner of stock, is subject to the tax and not entitled to a refund. However, since retroactive application of the revised statute would be inequitable, the revised statute will apply prospectively to the 1994 tax year.

**Am Jur 2d, State and Local Taxation §§ 244-253.**

Appeal by plaintiff from judgment entered 8 November 1991 by Judge Dexter Brooks in Wake County Superior Court. Heard in the Court of Appeals 8 December 1992.

*Womble Carlyle Sandridge & Rice, by Jasper L. Cummings, Jr., for plaintiff appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Marilyn R. Mudge, for defendant appellee.*

COZORT, Judge.

Plaintiff filed suit challenging the constitutionality of North Carolina's intangibles tax levied on ownership of corporate stock. Plaintiff contends the provision violates the Commerce Clause of the United States Constitution by increasing the tax liability for shares of stock of corporations which have business activities, property locations, and tax liabilities outside of North Carolina; and by lessening the tax liability for shares in corporations whose business and property are largely or completely in North Carolina. The superior court granted summary judgment for the defendant Secretary of Revenue. We find the taxing scheme violates the

Commerce Clause, and we reverse. We further find that the provisions of the taxing scheme are severable, and we strike the portion of N.C. Gen. Stat. § 105-203 which gives a reduction in intangibles tax liability under the taxable percentage provision.

We begin with an overview of North Carolina's intangibles tax on corporate stock and other related tax statutes. (Several sections in Chapter 105 were amended in the 1991 and 1992 sessions of the General Assembly. None of the amendments affect the resolution of the issues presented in this case. For convenience to the reader, all references are to the most recent version of the statutes.) Pursuant to N.C. Gen. Stat. §§ 105-130 through 105-130.41 (1992), North Carolina imposes an income tax on corporations doing business in North Carolina. If a corporation does business only in North Carolina, then one hundred percent of the corporation's business income is taxed in North Carolina. N.C. Gen. Stat. § 105-130.3 (1992). If a corporation does business in North Carolina and other states, then only that percentage of business income apportioned to North Carolina is taxable here. N.C. Gen. Stat. § 105-130.4(b) (1992). A corporation's business income is apportioned on the basis of three factors: (1) the corporation's total sales in North Carolina divided by the corporation's total sales everywhere during the income year; (2) the value of the corporation's property owned, rented or used in North Carolina during the income year divided by the value of all the corporation's property owned, rented or used during the income year; and (3) the total amount paid by the corporation in North Carolina during the income year as compensation divided by the total amount paid by the corporation everywhere during the income year. N.C. Gen. Stat. § 105-130.4(i) through (1)(3). The first factor, sales, is double-weighted in the apportionment formula. *Id.* A multistate corporation's nonbusiness income, such as rents, royalties, interest, and gains and losses, is subject to North Carolina income tax if the income has some connection to the state; for example, North Carolina is the corporation's principal place of business or the situs of the nonbusiness activities or investments. N.C. Gen. Stat. § 105-130.4(c)-(h) (1992).

Pursuant to N.C. Gen. Stat. § 105-198 through § 105-217 (1992), North Carolina imposes an intangibles tax on accounts receivable; bonds, notes, and other evidences of debt; beneficial or equitable interests in foreign trusts; and shares of stock. N.C. Gen. Stat. § 105-203 (1992) provides in pertinent part:

All shares of stock . . . owned by residents of this State
. . . shall be subject to an annual tax, which is hereby levied,
of twenty-five cents (25¢) on every one hundred dollars
($100.00) of the total fair market value of the stock on December
31 of each year less the proportion of the value that is equal
to:

(1) [T]he proportion of the dividends upon the stock deductible
    by the taxpayer in computing its income tax liability under
    G.S. 105-130.7 without regard to the fifteen thousand dollar
    ($15,000) limitation under G.S. 105-130.7 . . . .

The provision beginning with "less the proportion of the value"
is commonly referred to as the taxable percentage provision, which
is the subject of plaintiff's challenge.

Under the tax scheme, if a corporation does no business in
North Carolina and has no taxable income here, then the taxable
percentage of a shareholder's stock is one hundred percent. If a
multistate corporation does business in North Carolina and earns
business and/or nonbusiness income subject to North Carolina in-
come tax, then the taxable percentage of a shareholder's stock
is the inverse of the issuing corporation's net taxable income in
North Carolina. The tax is collected by the state, made part of
the General Fund, and is available for appropriation to the tax-
payer's resident county. N.C. Gen. Stat. § 105-213.1 (1992).

Plaintiff is a North Carolina corporation which, as of 31
December 1990, held stock in six corporations. Of the six corpora-
tions, only Food Lion, a multistate corporation, conducted business
in North Carolina. Since forty-six percent of Food Lion's net income
was subject to North Carolina corporate income tax for the 1990
taxable period, the taxable percentage of plaintiff's stock in Food
Lion was fifty-four percent. The taxable percentage of plaintiff's
stock in the remaining five corporations was one hundred percent.
On 8 January 1991, plaintiff filed an intangible personal property
tax return and remitted $10,884.00. On 1 May 1991, plaintiff filed
suit in Wake County Superior Court seeking a refund of the
$10,884.00 paid in intangibles tax, a declaratory judgment that N.C.
Gen. Stat. § 105-203 is unconstitutional, and attorneys' fees. Both
parties moved for summary judgment. Judge Dexter Brooks granted
summary judgment for the Secretary of Revenue.

## FULTON CORP. v. JUSTUS

[110 N.C. App. 493 (1993)]

On appeal, plaintiff argues that the trial court erred in granting summary judgment because the intangibles tax (1) violates the Commerce Clause of the United States Constitution, and (2) violates the Due Process and Equal Protection Clauses of the United States and North Carolina Constitutions. Plaintiff further argues that the trial court erred in denying relief pursuant to 42 U.S.C.S. § 1983 and attorneys' fees pursuant to 42 U.S.C.S. § 1988.

[1] We first consider whether plaintiff-taxpayer has standing to challenge the constitutionality of the statute. In North Carolina, a taxpayer has standing to challenge a tax if " 'the tax levied upon him is for an unconstitutional . . . purpose, . . . the carrying out of all the challenged provisions "will cause him to sustain personally, a direct and irreparable injury," or [if] he is a member of the class prejudiced by the operation of the statute . . . .' " *Orange County v. N.C. Dept. of Transportation*, 46 N.C. App. 350, 361, 265 S.E.2d 890, 899, *disc. review denied*, 301 N.C. 94 (1980) (citations omitted). The United States Supreme Court has recognized, at least implicitly, that a local taxpayer has standing to challenge a tax on the grounds that the tax violates the Commerce Clause. *See Goldberg v. Sweet*, 488 U.S. 252, 261, 102 L.Ed.2d 607, 617 (1989); *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 10 L.Ed.2d 202, *reh'g denied*, 374 U.S. 858, 10 L.Ed.2d 1082 (1963); *I.M. Darnell & Son Co. v. Memphis*, 208 U.S. 113, 52 L.Ed. 413 (1908); *Walling v. Michigan*, 116 U.S. 446, 29 L.Ed. 691 (1886). We thus find plaintiff has standing to challenge the taxing provisions.

[2] Next, we consider plaintiff's argument that North Carolina's intangibles tax violates the Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8, cl. 3 confers upon Congress the power "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." Plaintiff argues: (1) that the discrimination appears on the face of the statute; (2) that the tax indirectly discriminates against out-of-state business; and (3) that the compensating tax defense is not available to save the tax. Plaintiff summarizes the discrimination as follows: The more a corporation's business and property are located in North Carolina, the higher is the percentage of its income subject to taxation in this state, and the higher is the percentage of its stock not subject to the intangibles tax. The more a corporation's business and property are located out-of-state, the higher is the percentage of its stock subject to the intangibles tax. Therefore, the tax scheme

favors corporations that operate totally or more in North Carolina and disfavors corporations that operate totally or more in other states. Plaintiff cites two possible impacts on interstate commerce. First, plaintiff alleges the tax encourages investors to buy stock in local corporations, thereby possibly affecting the ability of out-of-state corporations to raise capital in North Carolina, thus lessening the trading of stocks in interstate commerce. Second, plaintiff alleges local corporations may be encouraged not to enter interstate commerce in order to avoid the intangibles taxation for their shareholders.

To survive constitutional challenge under the Commerce Clause, a tax must (1) apply to an activity with a substantial nexus with the taxing state, (2) be fairly apportioned, (3) be fairly related to the services provided by the state, and (4) not discriminate against interstate commerce. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L.Ed.2d 326, 331, *reh'g denied*, 430 U.S. 976, 52 L.Ed.2d 371 (1977). At issue here is the fourth requirement. It is fundamental that "[n]o State may, consistent with the Commerce Clause, 'impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business.' " *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 329, 50 L.Ed.2d 514, 524 (1977) (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 3 L.Ed.2d 421, 427 (1959)). "A State may no more use discriminatory taxes to assure that nonresidents direct their commerce to businesses within the State than to assure that residents trade only in intrastate commerce." *Id*. at 334-35, 50 L.Ed.2d at 527. "Whether the discriminatory tax diverts new business into the State or merely prevents current business from being diverted elsewhere, it is still a discriminatory tax that 'forecloses tax-neutral decisions and . . . creates . . . an advantage' for firms operating in [the State] by placing 'a discriminatory burden on commerce to its sister States.' " *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 406, 80 L.Ed.2d 388, 402 (1984) (quoting *Boston Stock Exchange*, 429 U.S. at 331, 50 L.Ed.2d at 525).

Discrimination may appear on the face of the statute or in its practical operation. "When a tax, on its face, is designed to have discriminatory economic effects, the Court 'need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.' " *Id*. at 406-07, 80 L.Ed.2d at 403 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 760, 68 L.Ed.2d 576, 604 (1981)). "Once

a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry." *Chemical Waste Management v. Hunt*, 504 U.S. ---, 119 L.Ed.2d 121, 132 (1992). "[W]here discrimination is patent, . . . neither a widespread advantage to in-state interests nor a widespread disadvantage to out-of-state competitors need be shown." *New Energy Co. v. Limbach*, 486 U.S. 269, 276, 100 L.Ed.2d 302, 310 (1988).

"[A] State may validate a statute that discriminates against interstate commerce by showing that it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives." *Id.* at 278, 100 L.Ed.2d at 311. A state may also validate a facially discriminatory tax by showing that the tax is a compensatory tax. A tax may be considered a compensating tax when "[the] State is attempting to impose a tax on a substantially equivalent event to assure uniform treatment of goods and materials to be consumed in the State." *Maryland v. Louisiana*, 451 U.S. at 759, 68 L.Ed.2d at 603; *see also Ashland Oil, Inc. v. Caryl*, 497 U.S. 916, 111 L.Ed.2d 734 (1990).

Applying these principles to North Carolina's intangibles taxing scheme, we find that the tax facially discriminates against interstate commerce. Shareholders of out-of-state corporations are required to pay intangibles taxes on a higher percentage of shares than shareholders of corporations operating solely in North Carolina. We further find that the facially discriminatory tax indirectly encourages the development of local business by placing a greater burden on economic activities occurring outside North Carolina than is placed on similar activities within North Carolina. The tax forecloses tax-neutral decisions and creates an advantage for firms operating in North Carolina. *See Westinghouse*, 466 U.S. at 406, 80 L.Ed.2d at 402.

[3] We next consider whether the discriminatory effect of the tax is counterbalanced by a compensating tax. We must determine if the State is attempting to impose a tax on a substantially equivalent event to assure uniform treatment of goods and materials to be consumed in the State. In *Armco, Inc. v. Hardesty*, 467 U.S. 638, 81 L.Ed.2d 540, *reh'g denied*, 469 U.S. 912, 83 L.Ed.2d 222 (1984), the United States Supreme Court addressed the constitutionality of West Virginia's business and operation tax. There, plaintiff, an Ohio corporation engaged in the business of manufacturing and selling steel products in West Virginia, challenged on Commerce

**FULTON CORP. v. JUSTUS**

[110 N.C. App. 493 (1993)]

Clause grounds the constitutionality of West Virginia's tax requiring persons engaged in the business of selling tangible property at wholesale to pay taxes on gross receipts. Local manufacturers were exempt from the gross receipts tax; however, they were required to pay a higher manufacturing tax. The United States Supreme Court found the tax unconstitutional, rejecting West Virginia's argument that the higher manufacturing tax was a compensating tax for the gross receipt tax. The Court held:

> [M]anufacturing and wholesaling are not "substantially equivalent events" such that the heavy tax on in-state manufacturers can be said to compensate for the admittedly lighter burden placed on wholesalers from out of State. Manufacturing frequently entails selling in the State, but we cannot say which portion of the manufacturing tax is attributable to manufacturing, and which portion to sales. The fact that the manufacturing tax is not reduced when a West Virginia manufacturer sells its goods out of State, and that it is reduced when part of the manufacturing takes place out of State, makes clear that the manufacturing tax is just that, and not in part a proxy for the gross receipts tax imposed on Armco and other sellers from other States.

*Id.* at 643, 81 L.Ed.2d at 545-46. The Court further reasoned that there was discrimination against interstate commerce when the two taxes were considered together: "If Ohio or any of the other 48 States imposes a like tax on its manufacturers — which they have every right to do — then Armco and others from out of State will pay both a manufacturing tax and a wholesale tax while sellers resident in West Virginia will pay only the manufacturing tax." *Id.* at 644, 81 L.Ed.2d at 546. Finally, the Court rejected West Virginia's argument that Armco had to prove actual discriminatory impact by naming a state that imposes a manufacturing tax resulting in a tax burden higher than that imposed on Armco's competitors in West Virginia. Rather, the test is whether the facially discriminatory tax is internally consistent such that " 'if applied by every jurisdiction' there would be no impermissible interference with free trade." *Id.*

The Secretary of Revenue argues here that taxing shareholders on the proportion of their stock values equivalent to the percentage of the issuing corporation's income taxed outside the state compensates for the state's inability to tax the corporation's out-of-state

property and the income it generates. We disagree. We find the Court's reasoning in *Armco* applicable to this case. We note first that there is only a vague relationship between property taxes paid by a corporation to governmental entities in North Carolina and the intangibles property tax paid by its shareholders on the corporation stock. As plaintiff points out, under the tax scheme a corporation could pay no property taxes in North Carolina, and the taxable percentage of its stock still be less than one hundred percent because the taxable percentage is computed by multiplying *three* factors: sales, payroll, and property. Second, the "compensating tax" is levied upon the shareholder, a taxpayer different from the corporation. If a corporation owns no property in North Carolina, the state has no burden of providing protection to the corporation's property and should not be allowed to tax the corporation's stock as proxy for the corporate property. We find no substantially equivalent event justifying the imposition of the intangibles tax at a higher percentage on the stock of out-of-state corporations than in-state corporations. We thus reject the Secretary's argument on compensating tax.

The Secretary further argues that *Darnell v. State*, 174 Ind. 143, 90 N.E. 769 (1910), *aff'd, Darnell v. Indiana*, 226 U.S. 390, 57 L.Ed. 267 (1912), is dispositive of plaintiff's appeal. In *Darnell*, Indiana sought to collect taxes on stock of a Tennessee corporation owned by an Indiana resident. Under the Indiana statute, the state could levy taxes on all shares in a foreign corporation, except national banks, owned by state residents, and all shares in a domestic corporation owned by state residents when the property of the corporations was not exempt or not taxable to the corporation itself. *Id.* at 397-98, 57 L.Ed. at 272. The value of the stock exceeding the value of the tangible taxable property was also taxable. Plaintiff argued to the Indiana Supreme Court that the tax discriminated "in favor of domestic stocks as against shares in a foreign corporation, and that a resident owning stock in a domestic corporation escapes taxation thereon, while his next-door neighbor owning shares of stock in a foreign corporation is required to pay taxes on his holdings." *Darnell v. State*, 174 Ind. at 153-54, 90 N.E. at 773. The Indiana Supreme Court upheld the tax, finding that the purpose of the tax was "to require all property to contribute pro rata its share of taxes, and so far as practicable to avoid double taxation." *Id.* at 156, 90 N.E. at 774. The Indiana Supreme Court stated:

FULTON CORP. v. JUSTUS

[110 N.C. App. 493 (1993)]

Domestic corporations are taxed upon all their property: . . . The state, in its discretion, might tax the shares of stock in such corporation to the individual owners thereof residing in this state, but it would in a sense be double taxation, and it has not been the policy of this state to do so. Shares of stock in a foreign corporation doing business in another state owned and held by a resident of this state are taxed because they have not been and cannot be otherwise taxed by this state. If a corporation organized in this state is engaged in business in another state, and all its tangible property is outside this state, then its shares of stock owned by residents within this state are taxable in the same manner as stock in a foreign corporation. The fact that the state in which the corporate property may be situated taxes such tangible property in no wise affects the right of this state to tax its own inhabitants upon all their personal property including shares of stock in such foreign corporation. The man who resides in one state and enjoys the benefit of its schools, churches, society, highways, and other public accommodations, as well as its governmental protection over his person and property, is in no position to complain when required to contribute by taxation ratably upon his property for the maintenance of these institutions and the local government. It is clear to our minds that the tax law of Indiana is not open to the charge of discrimination against stock in foreign corporations, but imposes only just and equal burdens upon all corporate stocks without regard to the place of incorporating or of conducting the corporate business, and does not violate either the third clause of section 8, art. 1, or the fourteenth amendment to the Constitution of the United States, and is accordingly valid.

*Id.* at 156-57, 90 N.E. at 774 (citations omitted). The United States Supreme Court affirmed with Justice Holmes writing:

The case is pretty nearly disposed of by Kidd v. Alabama, 188 U.S. 730, 47 L.ed. 669, 23 Sup. Ct. Rep. 401, where the real matter of complaint, that the property of the corporation presumably is taxed in Tennessee, is answered. But it is said that the former decision does not deal with the objection that the statutes work a discrimination against stock in corporations of other states, contrary to principles often recognized. The most serious aspect of this objection is that the statutes

FULTON CORP. v. JUSTUS

[110 N.C. App. 493 (1993)]

of Indiana do not make allowance if a foreign corporation has property taxed within the state. But, as to this, it is enough to say that, however the statutes may be construed in a case of that sort, the plaintiffs in error do not show that it is theirs, and that, as they do not belong to the class for whose sake the constitutional protection would be given, if it would, they cannot complain on that ground. . . .

The only difference of treatment disclosed by the record that concerns the defendants is that the state taxes the property of domestic corporations and the stock of foreign ones in similar cases. That this is consistent with substantial equality notwithstanding the technical differences was decided in Kidd v. Alabama, 188 U.S. 730, 732, 47 L.ed. 669, 672, 23 Sup. Ct. Rep. 401.

*Darnell v. Indiana*, 226 U.S. at 397-98, 57 L.Ed. at 272 (citations omitted).

We find *Darnell* distinguishable. Under the 1912 Indiana tax scheme, to the extent that a corporation paid property taxes to Indiana, the corporation's shareholders were exempt from paying taxes on the identical value of property already taxed to the corporation. As noted by the Indiana Supreme Court, the purpose of the tax was to "require all property to contribute pro rata its share of taxes, and so far as practicable to avoid double taxation." *Darnell*, 174 Ind. at 156, 90 N.E. at 774. Under the North Carolina scheme, corporate stock is not viewed as embodying the very same real and personal property owned by the corporation. Unlike the Indiana scheme, there is no effort to tax corporate property only once, to the extent its value is represented in the stock value. There is no one-to-one correlation between *property* tax paid by the corporation and taxes paid by the shareholder on shares owned. There is, however, a correlation between *income* taxed to the corporation and the property (shares) of the shareholder. In determining the amount of business income to be taxed to the corporation, the amount of corporate property located in North Carolina is only one of three unequally weighted factors: sales, payroll, and property. *See* N.C. Gen. Stat. § 105-130.4(i) through (1)(3). Since the sales factor is double weighted, the property factor accounts for only one-fourth of the apportionment formula. *See* N.C. Gen. Stat. § 105-130.4(i). We note further that North Carolina has largely abandoned its efforts to avoid double taxation of cor-

porate income. For example, under the scheme for taxing dividends, corporate income in the form of dividends is subject to double taxation. *See* N.C. Gen. Stat. §§ 105-130.7(1) and 105-151.19 (1992). We conclude that the difference in the 1912 Indiana tax scheme and the present North Carolina tax scheme is significant, such that *Darnell* is not dispositive of plaintiff's appeal.

[4] Having found the intangibles taxing scheme to be unconstitutional, we now must determine the proper remedy. Plaintiff argues that the entire tax must be stricken. The Secretary argues that we must enforce the Intangibles Tax Article's severability clause, thus excising the phrasing which reduces the intangibles tax on corporate stock of totally or partially North Carolina corporations. We find the Secretary's argument persuasive. N.C. Gen. Stat. § 105-215 (1992) provides:

> If any clause, sentence, paragraph, or part of this [Intangible Personal Property Tax] Article or schedule shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this Article or schedule, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment shall have been rendered.

Accordingly, we find that we must excise from N.C. Gen. Stat. § 105-203 this language:

[L]ess the proportion of the value that is equal to:

> (1) In the case of a taxpayer that is a corporation, the proportion of the dividends upon the stock deductible by the taxpayer in computing its income tax liability under G.S. 105-130.7 without regard to the fifteen thousand dollar ($15,000) limitation under G.S. 105-130.7 . . . .

As rewritten, the statute levies an intangibles tax upon "[a]ll shares of stock . . . owned by residents of this State . . . ."

Plaintiff, a resident owner of stock, is subject to the tax and not entitled to a refund. Both the United States Supreme Court and North Carolina Supreme Court have "recognized that in some cases it would be inequitable to apply newly announced rules retroactively if prior to the enunciation of the rules parties had reasonably relied on certain principles in ordering their affairs. In such a

FULTON CORP. v. JUSTUS

[110 N.C. App. 493 (1993)]

case the rule is not applied retroactively." *Swanson v. State of N.C.*, 329 N.C. 576, 581, 407 S.E.2d 791, 793 (1991). Accordingly, we find retroactive application of the revised statute inequitable and therefore order the revised statute to apply prospectively to the 1994 tax year.

We further find that plaintiff is not entitled to relief under 42 U.S.C.S. § 1983. A party may bring suit against state officials pursuant to 42 U.S.C.S. § 1983 for violations of the Commerce Clause. *Dennis v. Higgins*, 498 U.S. 439, 112 L.Ed.2d 969 (1991). "[W]hen an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacities, neither a State nor its officials acting in their official capacity are 'persons' under section 1983 when the remedy sought is monetary damages." *Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282-83 (1992). " '[A] state official in his . . . official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Id.* at 771, 413 S.E.2d at 283 (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 105 L.Ed.2d 45, 58 (1989) ) (citations omitted). In its complaint, plaintiff seeks monetary damages and declaratory relief, not injunctive relief. Therefore, plaintiff is not entitled to relief pursuant to 42 U.S.C.S. § 1983 or 42 U.S.C.S. § 1988.

Having decided the issue on Commerce Clause grounds, we need not address plaintiff's Due Process and Equal Protection arguments.

In sum, we hold that the portion of the State's intangibles tax scheme which increases the tax liability for owners of stock in corporations whose business and property is not completely in North Carolina violates the Commerce Clause of the United States Constitution. That language is excised from N.C. Gen. Stat. § 105-203. Plaintiff is entitled to no refund. The trial court's judgment for the defendant is reversed, and the cause is remanded for entry of a judgment declaring the intangibles tax provision at issue in violation of the Commerce Clause. Plaintiff is entitled to no further relief.

Reversed and remanded.

Judges GREENE and WYNN concur.