## KING *v.* UNITED STATES.

1. Where a tax long past due to the United States has been paid to the collector of internal revenue, he and his sureties are liable therefor, although the amount so paid had not then been returned to the assessor's office or passed upon by him, nor had a sworn return of the tax-payer been delivered.

2. The ruling in *The Dollar Savings Bank* v. *United States* (19 Wall. 227), that the obligation to pay the tax on dividends or interest does not depend on an assessment by any officer, and that a suit for such tax can be sustained without it, reaffirmed and applied to the present case.

3. The tax so paid is public money covered by the terms of the bond.

ERROR to the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Edward Bissell* for the plaintiffs in error.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court against Harry Chase and his sureties on his official bond as collector of internal revenue for the tenth district of Ohio.

King and his co-sureties alone join in the writ, and the case

having been submitted to the court below without a jury, the principal error assigned is that on the facts found by that court the judgment should have been in their favor.

The substance of the facts so found is, that while Chase was in office as collector, and while the defendants were liable on his bond for his official acts, he received from the treasurer of the Toledo, Wabash, and Western Railroad Company, as and for the tax on interest paid on their mortgage bonds, the sum of $24,923.87, which he did not pay into the treasury of the United States, and of which he neglected to render any account to the government. As it is on the particular circumstances of this payment to Chase that the defendants rely, it is necessary to state them with some care as they appear in the findings of the court.

It thus appears that on the first day of June, 1868, the railroad company was indebted to the United States, for the five per cent tax on interest paid by it on its mortgage bonds, the sum of $112,778, which was on that day paid to Chase in three checks of the treasurer of the railroad company on two different banks of Toledo, on which the money was paid to Chase by the banks.

The taxes for which this sum was paid included the whole amount of the taxes for the years 1865, 1866, and 1867. Of this sum there was due —

| | |
|---|---|
| For the year 1865 . . . . . . | $19,422.50 |
| For the year 1866 . . . . . . | 44,821.25 |
| For the year 1867 . . . . . . | 48,534.75 |

This entire sum, as we have said, was paid at the same time by two different checks of that date.

At the time of this payment there was delivered to Chase six separate returns of the taxes so due in the form prescribed by law to be made to the assessor of taxes, which were subscribed by the treasurer of the company, but not sworn to, and which had not then been filed with or delivered to said assessor, but all of which were delivered by Chase to the assessor, except the returns for the months of August, September, and October, 1867, which were the latest returns so delivered to Chase at the time the money was paid. These returns he did not

deliver to the assessor, nor did he make any mention of them in his report to the government at any time, and he retained the amount of them out of the money received from the treasurer of the company.

It was five years after this before the officers of the government discovered that he had received this sum above what he had accounted for, and in the mean time he had become insolvent.

The proposition of defendants' counsel is, that because this money was not received by Chase on any return made to the assessor, or on any assessment made by him or by the commissioner of internal revenue, for such taxes, and because the return delivered to Chase was not verified by oath, it was a voluntary deposit of the money in his hands by the treasurer of the company, and was not received by him in his official character. That it was not his duty to receive it for the government under such circumstances, and his sureties are not liable because it was an unofficial act. The argument has been pressed with great ingenuity and skill, and with many illustrations ; but in all its forms it amounts to the averment that Chase had no legal authority as collector of internal revenue to receive the money for the government under the circumstances named, and the payment was not a lawful or valid payment.

There can be no question that Chase understood himself as receiving the money for the government, and in payment of the taxes due. Nor is there any question that the treasurer of the railroad company intended it as payment to Chase in his official character as collector, and supposed he had paid the taxes by so doing ; for Chase gave him three separate receipts in which the taxes for each of the years we have mentioned are set out, and also the months of the year in which they accrued, which he signed officially as collector, and declared in each receipt that it was in full of the account. Nor can there be any doubt that these taxes were owing and then due to the United States; for the blank form used by the treasurer in making these returns shows that such returns were by law to be made to the assessor on or before the tenth day of the month following that in which the interest became due and payable,

and were to be paid to the collector on or before the last day of that month. The latest of the taxes in the case before us had long been due. Part of them had been detained by the railroad company over two years. All of them over six months. The company, by the returns which were handed to the collector, acknowledged the sums therein stated to be due, and tendered him the money. There can be no question raised as to the validity of the tender (because it was in bank checks indorsed good by the bank instead of money), unless objection had been made to the character of the tender.

The narrow question then is, whether, when a corporation presents to the collector a statement of taxes long past due, which taxes must in the end be paid to him, and tenders him the full payment of said taxes, he may not receive them and give a valid acquittance for the amount so received.

It is not necessary to decide that such a transaction would bar a recovery by the United States of any sum in excess of that paid, which might afterwards be found to be owing for the same period and for the same tax. The simple question is, was it a valid payment for that amount, and to that extent, which the collector might lawfully receive and be bound to pay to the government.

To hold the contrary is to decide that a debt long past due and acknowledged to be due by the debtor cannot be paid, when he is willing to pay, and the proper officer of the government ready to receive it, because the debtor has neglected to report the same facts to some other officer, or that officer has neglected to make report of the facts. Of the duty of the railroad company to pay the money as speedily as possible there can be no doubt. When it admitted the obligation and offered to pay it, was there no one to whom it could pay it?

Sect. 3142, Revised Statutes, then in force, provides for the appointment of a collector of internal revenue for every collection district. Sect. 3143, in prescribing the conditions of his official bond, makes it his duty to account for and pay over to the United States all public money which may come into his hands or possession, and this condition is in the bond which is the foundation of the present suit. Money paid for taxes past due and received by the collector as such, and for which he

gives a receipt as collector, specifying with precision the taxes for which it is paid, is public money. If it is not, whose money is it? The tax-payer has parted with it in voluntary payment of a debt due the United States. The collector appointed by the United States has received it as money paid to the United States on a debt due the United States. It is not, therefore, his money. It is the property of the United States, and within the meaning of the bond it is public money.

The answer made to this by counsel is that the debt was not *due*, or, at least, not *payable*, until the assessor had received and acted on the return made by the corporation. There is nothing in the statute which says this in terms. If it be sound it must be an implication, and we do not see how such an implication can arise. That such an assessment was not made long before was owing to the neglect of the company to make proper returns. Did that neglect make the taxes which should have been paid a year before any less a debt from that time? And can it be said they were not due at the time the statute says they should be paid, because the company failed to make the report which it was its duty to make?

If there could be any doubt upon this point, it was set at rest by the decision of this court in *The Dollar Savings Bank* v. *United States* (19 Wall. 227), where the same objection was taken to a suit to recover the tax. The court held explicitly that the obligation to pay the tax did not depend on an assessment made by any officer whatever, but that the facts being established on which the tax rested, the law made the assessment, and an action of debt could be maintained to recover it though no officer had made an assessment. So that, both on principle and authority, we are of opinion that the judgment for the sum received by the collector and not paid over, with interest, is right, and must be affirmed. See also *United States* v. *Ferary*, 93 U. S. 625.

Sect. 825, Revised Statutes, enacts that "there shall be taxed and paid to every district attorney two per centum upon all moneys collected or realized in any suit or proceeding arising under the revenue laws, and conducted by him, in which the United States is a party, which shall be in lieu of all costs and fees in such proceeding."

The court in this case, after a motion for re-taxation, ordered that this two per cent on the sum recovered, amounting to $712.77, be taxed against defendants. In this we think there was error.

1. The section applies only to cases where the money is collected or realized. This cannot be told until it is done, and the sum cannot, therefore, be taxed in the judgment against defendant. Suppose in the present case half the judgment is realized and no more, then the sum taxed is twice as much as the law allows.

2. This two per cent is to be in lieu of all costs and fees in such proceeding. If it be costs taxable against defendants, then where, after a long litigation, the defendant is adjudged to pay ten dollars and costs, he escapes by paying ten dollars and twenty cents in full. This is obviously not the purpose of the statute, but must be its results if the word " taxed " in the section means taxed in court against the defendant.

The section was no doubt intended to establish a rule of compensation as between the government and its attorney, by which, when he has been successful, he gets a commission of two per cent for collection, but leaves him his ordinary statutory fee where nothing is realized.

So much of the judgment, therefore, as relates to this sum taxed in the costs will be reversed, and the remainder of the judgment affirmed; and it is

*So ordered.*


MR. CHIEF JUSTICE WAITE did not sit in the case, nor take any part in deciding it.