## SPRECKELS SUGAR-REFINING CO: v. McCLAIN, Collector.

### (Circuit Court, E. D. Pennsylvania. May 18, 1901.)

### Nos. 3, 46.

1. INTERNAL REVENUE—WAR REVENUE ACT OF 1898—TAX ON SUGAR REFINERS.

The tax required to be paid by sugar refiners by the war revenue act of 1898, § 27, while measured by their gross receipts, is not a direct tax on such receipts, but an excise laid upon the business of refining, and as such is constitutional.

2. SAME—MODE OF COLLECTION.

The war revenue act of 1898 having made no provision as to the mode of collecting such tax, by virtue of section 31, and Rev. St. § 3447, the commissioner was authorized to establish the same by regulation; and having done so by circular of instructions July 7, 1899, making the tax assessable as soon as determined from the monthly returns required by the act, from that time forward monthly collections were expressly authorized by law. Prior to that date such collections were also authorized, the act itself making the assessment when the amount of the tax due was made to appear by the monthly returns showing gross receipts exceeding $250,000.

3. SAME—GROSS RECEIPTS OF REFINER—MONEY EARNED BEFORE PASSAGE OF ACT.

Such tax being upon the business, and not upon the receipts, money received by a refiner after the passage of the act, but which was the product of business done previously, is not to be taken into account in computing the tax.

4. SAME—ITEMS INCLUDED IN GROSS RECEIPTS.

In fixing the gross receipts of a corporation organized for and engaged in the business of sugar refining, for the purpose of computing the tax on such business, interest received on corporate funds, and for the rental of wharves owned by the corporation, and used chiefly for the purposes of its business, should be included as income from the business; but receipts from stevedoring done in unloading cargoes of sugar consigned to the corporation, and charged to the vessel, whose duty it was to discharge such cargoes, are not receipts of the business, and should be excluded.

Action against defendant, as collector of internal revenue, to recover taxes claimed to have been illegally exacted from plaintiff as a sugar refiner.

John G. Johnson, for plaintiff.

J. W. Thompson and J. B. Holland, for defendant.

J. B. McPHERSON, District Judge. The parties to this action have agreed upon a special verdict, of which the following are the material portions:

"The jury, as a special verdict, do find that during the period covered by the first suit to October sessions, 1900, No. 3, returns were made by the plaintiff to the defendant of its receipts as per Schedule A, hereto attached, which is a summary of returns of Spreckels Sugar-Refining Company, covering its entire gross receipts from June 14, 1898, to March 1, 1900; that the column headed, 'Period Covered by Returns,' shows the month for which the returns were made; that the column headed, 'Indebtedness Due Before June 14th, 1898,' covers the amounts included in the monthly returns from month to month of receipts by the company for sugars sold and delivered antecedently to June 14, 1898. No receipts from sugars sold subsequently to June 14, 1898, are included in said column. The column headed, 'Interest,' gives the amounts included in said monthly returns of receipts during the

month by the plaintiff derived from interest upon its investments of moneys and property as explained by the testimony of Mr. Ball. The column headed, 'Rent and Wharfage,' gives the amount included in said monthly returns from time to time of receipts during each month by the plaintiff as rent and wharfage of its property, said rent and wharfage being paid as is explained in the testimony of Mr. Ball. The column headed, 'Stevedoring,' gives the receipt in each month included in its monthly returns by the corporation plaintiff from stevedoring. Said receipts from stevedoring were had in the way and manner explained in the testimony of Mr. Ball. The column headed, 'Sugars Sold Since June 14, 1898,' gives the amount of receipts in each month included in said monthly returns ˙ from all sales of sugar, whether manufactured and refined, manufactured or refined, or sold without manufacturing or refining, by the corporation plaintiff since the 14th day of June, 1898. The column headed, 'Gross Receipts,' states the amounts of each monthly return made by the corporation plaintiff of its receipts in the respective months, and includes all its receipts from ˙ every source. It is the aggregate of the returns under the five special heads just described. The column headed, 'Amount of Tax Paid,' gives the amount paid at each monthly time of payment by the corporation plaintiff upon the total amount of its gross receipts as returned for the month in the preceding column. The column headed. 'Dates of Payment,' gives the date of payment of each of the amounts stated in the preceding column.

"The Schedule A, being 'Summary of returns of Spreckles Sugar-Refining Company, covering its entire gross receipts from March 1st, 1900, to August 1st, 1900,' gives similar particulars concerning all the transactions covered by the second suit to October sessions, 1900, No. 40.

"The jury find that the defendant, the collector of internal revenue, compelled the corporation plaintiff to pay under protest, at the respective times mentioned in the column headed, 'Dates of Payment,' the amount of the tax upon the monthly returns; that an appeal was duly made to the commissioner of internal revenue; and that before each of the suits was brought the commissioner of internal revenue, as to the amounts comprised in said suits, refused to make any allowance or return of the sums paid. * * *

"The jury further find that the plaintiff, the Spreckels Sugar-Refining Company, is a corporation incorporated under the laws of the state of Pennsylvania for the purpose 'of refining sugar, which will involve the buying of raw material therefor, and selling the manufactured products, and of doing whatever else shall be incidental to the said business of refining.'

"If the court shall be of the opinion that the plaintiff has a cause of action against the defendant for the total amount of taxes paid on all gross receipts during the period covered by said suit, they find for the plaintiff in the respective suits for the amounts so found to have been paid. with interest thereon as above stated; otherwise, they find for the defendant.

"If the court shall be of the opinion that the plaintiff is not entitled to recover the total amount of the taxes paid upon the plaintiff's gross receipts as aforesaid, but is entitled to recover for the amount paid upon any of the items included in its returns of gross receipts as above set forth, they find for the plaintiff for the amounts so found, to have been paid, with interest as aforesaid; otherwise, they find for the defendant.

"If the court shall be of the opinion that the plaintiff has a cause of action against the defendant for interest upon the amounts paid monthly as above set forth, they find for the plaintiff for the said amounts of interest; otherwise, they find for the defendant."

The principal question raised by this case is the constitutionality of section 27 of the war revenue act of June 13, 1898, so far as sugar refiners are concerned. The plaintiff contends that the tax imposed by the section is a direct tax specifically laid upon the gross receipts of refiners, and is invalid, because it is not apportioned in accordance with article 1, § 9, cl. 4, of the federal constitution; while the government contends that the tax is valid, because it is not a direct tax, but

an excise laid upon the business of refining, and not upon the receipts themselves arising from the business. The present suit is a test case, destined for the supreme court of the United States, and therefore I shall not undertake the superfluous and somewhat difficult task of discussing the numerous decisions which have more or less bearing on the controversy. A question of taxation is peculiarly a question for a court of last resort; for the discussion of the subject belongs essentially to a region of fiction and construction, and the final decision is often determined by considerations of policy alone. Every tax, in the final analysis, is an exaction from an individual or a corporate taxpayer; but in many an instance the discussion stops short of this point, and treats the tax as if it were to be satisfied by the inanimate object or the immaterial franchise in respect of which it has been imposed. Frequent examples of such use of words may easily be found, and this method of speech has led, I think, to much confusion and discord among the cases, so that it is not hard to find ample authority on almost any phase of a controversy concerning taxation. In the case now before the court it would not be difficult to choose from the decisions that have been cited by the respective parties sufficient authority to support either conclusion, and, in this state of the question, I believe my duty to be fully performed when I sustain the constitutionality of the section without discussion, on the ground that I have not been clearly satisfied that it ought to be stricken down.

Several questions remain to be decided, upon which I shall express my opinion briefly: First. Was the collector justified in demanding monthly payments? I answer this question in the affirmative. The tax is, no doubt, an annual tax, in the sense that it is to be paid each year; and, if provision for its assessment and collection had been made by the act, such provision would have been obligatory both upon the government and upon the refiner. But, as no such provision is to be found, and as section 31 expressly declares "that all administrative, special or stamp provisions of law, including the laws in relation to the assessment of taxes, not heretofore specifically repealed, are hereby made applicable to this act," it seems to follow that by virtue of this section all the provisions of section 3447 of the Revised Statutes become applicable. By the last-named section it is declared that, "whenever the mode or time of assessing or collecting any tax which is imposed is not provided for, the commissioner of internal revenue may establish the same by regulation." Such a regulation was made by the commissioner on July 7, 1899, by a circular, to be found in Treasury Decisions, No. 21,367, containing the following instruction to collectors of internal revenue: "Under the provisions of section 31, above quoted, it is also held that the tax thus imposed is assessable as soon as determined from the monthly returns required to be rendered." At least after July 7, 1899, therefore, the monthly assessments were expressly warranted by law. Before that date, I think that the act itself made the assessment, under the rule laid down in Dollar Sav. Bank v. U. S., 19 Wall. 240, 22 L. Ed. 80, and in King v. U. S., 99 U. S. 233, 25 L. Ed. 373. In the former case Mr. Justice Strong used the following language:

"Nor is there anything in the objection that the taxes for which judgment has been recovered in this case had not been assessed. No other assessment than that made by the statute was necessary to determine the extent of the bank's liability. An assessment is only determining the value of the thing taxed, and the amount of the tax required of each individual. It may be made by designated officers, or by the law itself. In the present case the statute required every savings bank to pay a tax of 5 % on all undistributed earnings made or added during the year to their contingent funds. There was no occasion or room for any other assessment. This was a charge of a certain sum upon the bank, and, without more, it made the bank a debtor."

This language is directly applicable to the present case, and whatever difficulty might have existed in applying the rule before July 9, 1899, to a case where the gross receipts did not at once appear from the monthly returns to exceed $250,000, no such difficulty is found in the case now under consideration; for the first return made by the plaintiff showed that the gross receipts for sugar sold since June 13, 1898,—the date of the act,—amounted in the last two weeks of that month to $660,865.07.

The second question is this: Was the plaintiff taxable in respect of money received after the passage of the act, although such money had been earned previously thereto? I think the answer must be, no. If the tax had been directly upon the plaintiff's gross receipts, the government's position upon this point would be stronger; for it might then be argued with a good deal of force that the act taxed all gross receipts in excess of $250,000, and took no account of the sources from which they were derived, except to declare that they must be received in the business of refining. But as the government takes the position that the tax is an excise upon the occupation of refining, measured by the annual receipts of the business, I think the inevitable inference is that the business should be valued either from the time the act was passed, or from the 1st of July succeeding,—that being the beginning of the special tax year,—and that receipts which were the product of a preceding business activity should not be taken into account.

The third question concerns the taxability of interest received by the plaintiff upon its corporate funds, either deposited in bank or invested in income-producing securities. This interest, I think, was properly included by the collector in determining the annual value of the business. It was corporate property, presumably used for corporate purposes, and was as much engaged in the business of refining as the capital invested in machinery or raw materials.

Similar observations may be made concerning the fourth question, namely, whether the receipts from capital invested in wharves was properly included. Scarcely any vessels lie at these wharves, except the vessels that bring raw sugar to the plaintiff, and the wharves are used for the convenience and greater profit of the corporate enterprise. The money paid by the vessels for wharfage is, I think, a receipt of the business. The receipts from stevedoring, however, I think, were not properly included. It is the duty of a vessel bringing sugar to the plaintiff to unload the cargo; and, if this duty should be actually discharged by the vessel, the cost of stevedoring would be paid from another source than from the plaintiff's treasury. If, how-

ever, the plaintiff chooses to unload the cargo and to charge the usual price for the work, this labor, it seems to me, is not done in the course of its business as a refiner, but merely in discharge of the vessel's obligation to unload at its own expense.

In accordance with the above opinion, the plaintiff is entitled to judgment as follows:

(1) For tax paid upon $204,912.51 and $517.92 of receipts on account of business done before the passage of the act; and

(2) For tax paid upon $143,146.45 and $25,874.31 of receipts for stevedoring; with the proper interest upon both sums.

The total amount which the plaintiff is entitled to recover is therefore $1,056.82, for which judgment will be entered.