STATE *ex rel.* FORT, COMMISSIONER OF FINANCE AND TAXATION, *et al.* *v.* CITY OF JACKSON.

(*Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

120

S. J. EVERETT, of Jackson, JORDAN STOKES, III, of Nashville, and W. F. BARRY, JR., Assistant Attorney-General for the State.

W. P. MOSS and PIGFORD & KEY, all of Jackson, for City of Jackson.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought in the name of the state upon the relation of certain of its fiscal officers to recover from the City of Jackson $2331 alleged to be due from the city to the state as inspection fees on fuel oil from February 27, 1930, to February 8, 1933. Upon answer and proof the suit was dismissed as to the fees claimed to have accrued prior to January 1, 1932—the effective date of the Code of 1932 (see section 26). There was a decree in favor of the state for the fees that accrued thereafter, amounting to $1,171. Both parties appealed.

We consider the city's appeal first.

Sections 6809-6850 of the Code of 1932 provide for the inspection and test of illuminating oils and volatile substances. Section 6817 is as follows:

"All benzol, gasoline, burning oil, distillate, fuel oil, gas oil, kerosene, naphtha, and/or any other volatile substances, reflecting a gravity of sixteen degrees or above on the Baumé scale, produced from petroleum, natural gas, oil shales or coal, by whatever trade name known and/or substitutes therefor, sold or used and/or stored in this state, separately or in combination for any purpose whatever, by any user and/or storer, including all subordinate governmental bodies, whether manufactured in this state or not, shall be inspected, under the general supervision of the inspector at large, before being sold or offered for sale or used and/or stored in this state."

It will be noticed that inspection of all the products enumerated in the foregoing section "sold or used and/or stored in this state, . . . by any user and/or storer, including all subordinate governmental bodies"

is required. This section of the Code is based on chapter 33 of the Acts of 1917 and chapter 12 of the Acts of 1929. The words ''including all subordinate governmental bodies'' were added to the statutory provisions as the latter were carried into the Code.

There can be no doubt as to the meaning of this section of the Code. It was intended to include municipalities—subordinate governmental bodies.

The proof shows that the fees provided for inspection of fuel oil largely exceed the cost of inspection and it is insisted by the City of Jackson that the Code provisions cannot be sustained.

■ The fuel oil bought and used by the City of Jackson is purchased in other states. It is shipped in tank cars to Jackson and removed into storage tanks belonging to the city. It is then used as fuel for the engines which run the city's pumping station and power plant.

It is argued that the oil so handled is under the protection of the commerce clause of the Federal Constitution (article 1, section 8, clause 3) and that nothing but an inspection tax could be levied against it. There is no denial that the inspection fees provided by the statute greatly exceed the actual cost of inspection. However, the oil ''upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce, and lost its immunity as such from state taxation.'' *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S., 249, 53 S. Ct., 345, 349, 77 L. Ed., 730, 87 A. L. R., 1191, and cases cited therein.

After the oil came to rest in the state and ceased to be in interstate commerce, the state was at liberty to impose an inspection fee in substantial excess of the cost of the inspection as a means of providing general

revenue. *Texas Co.* v. *Brown,* 258 U. S., 466, 42 S. Ct., 375, 66 L. Ed., 721.

The oil having passed out of interstate commerce, the exaction of the statutory inspection fee does not transgress the commerce clause of the Federal Constitution, even though the inspection law be regarded, to a great extent, as a revenue measure.

The city further insists that this oil was exempt from all taxes because article 2, section 30, of the Constitution of Tennessee provides that no article manufactured of the produce of this state shall be taxed otherwise than to pay inspection fees, and, under the law (*I. M. Darnell & Son Co.* v. *Memphis,* 208 U. S., 113, 28 S. Ct., 247, 52 L. Ed., 413), products of other states are entitled to the same exemption.

This section of the Constitution, however, does not forbid the levy of a privilege tax on the selling of articles manufactured of the produce of the soil. *Taylor* v. *Vincent,* 80 Tenn. (12 Lea), 282, 47 Am. Rep., 338; *Kurth* v. *State,* 86 Tenn., 134, 5 S. W., 593; *Seven Springs Water Co.* v. *Kennedy,* 156 Tenn., 1, 299 S. W., 792, 56 A. L. R., 496. So we think a privilege tax may be levied on the storage and use of a manufactured product of the soil. *Foster & Creighton Co.* v. *Graham,* 154 Tenn., 412, 285 S. W., 570, 47 A. L. R., 971. Under later decisions of this court, it can be said that the doing of almost anything may be declared a privilege and taxed as such. *Ogilvie* v. *Hailey,* 141 Tenn., 392, 210 S. W., 645, and decisions reviewed.

It was said in *State of Tennessee* v. *Reed Oil Company* (December Term, 1926)[1] that "The principle upon which the inspection Acts may be sustained as revenue measures is that authorizing the imposition of .license fees

[1] No opinion for publication.

and other regulatory measures under which revenue is taken by the State.'' It follows then, so far as the statutes considered may be regarded as revenue measures, they levy a privilege tax, not an *ad valorem* tax.

■ ■ As heretofore noted, the state appeals from so much of the chancellor's decree as denied it recovery prior to the effective date of the Code of 1932. We think there was no error in this. Although the acts previous to the Code of 1932 apparently required this inspection fee to be paid upon all oil used, sold, or stored, it is definitely settled by decisions of this court that tax laws do not apply to the property of the state nor to property of any of the arms of the state government unless they are especially mentioned therein or made subject thereto. *Nashville* v. *Smith,* 86 Tenn., 213, 6 S. W., 273; *Smith* v. *Nashville,* 88 Tenn., 464, 12 S. W., 924, 7 L. R. A., 469; *Bank* v. *Memphis,* 116 Tenn., 641, 94 S. W., 606; *Johnson City* v. *Weeks,* 133 Tenn., 277, 180 S. W., 327, 3 A. L. R., 1431; *Mayor and Aldermen of Morristown* v. *Hamblen County,* 136 Tenn., 242, 188 S. W., 796.

Opinions of the Attorney General to the effect that municipalities were liable for this inspection fee prior to 1932 were based on the theory that the fee was strictly an inspection fee. As shown, however, in *State* v. *Reed Oil Co., supra,* these fees are imposed more largely for revenue than otherwise, and cannot be treated as inspection fees strictly.

We think the chancellor's decree is correct, and it is in all respects affirmed.