STATE *v.* NASHVILLE, C. & ST. L. RY.

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

W. H. Swiggart, W. A. Miller, and Walker & Hooker, all of Nashville, for appellant.

26

ROY H. BEELER, Attorney-General, and W. F. BARRY and HARRY PHILLIPS, Assistant Attorneys-General, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit by the State to recover an imposition placed by Code, sections 6817 et seq., upon the sale, use and storage of petroleum products during the period September 5, 1933—June 30, 1937. From a decree for the State, the defendant has appealed.

The defendant owns and operates lines of railroad through the States of Tennessee, Alabama, Georgia and Kentucky, and brings to Nashville, Tennessee, from other States considerable quantities of oil, gasoline, etc. These products come to Nashville in tank cars, where the contents are withdrawn to stationary tanks and later distributed for use as needed in defendant's business in this and other States.

 That such storage and use of these products, after they are unloaded into the stationary tanks at Nashville, is subject to taxation is, of course, settled by *Nashville, C. & St. L. Ry.* v. *Wallace,* 288 U. S., 249, 53 S. Ct., 345, 77 L. Ed., 730, 87 A. L. R., 1191, and *State ex rel.* v. *City of Jackson,* 172 Tenn., 119, 110 S. W. (2d), 323.

The statutes to be considered on this appeal are contained in Code sections 6817-6823 and chapter 8 of the Acts of the Second Extra Session of 1931.

"6817. All benzol, gasoline, burning oil, distillate, fuel oil, gas oil, kerosene, naphtha and/or any other volatile substances, reflecting a gravity of sixteen degrees or above on the Baumé scale, produced from petroleum,

natural gas, oil shales or coal, by whatever trade name known and/or substitutes therefor, sold or used and/or stored in this state, separately or in combination for any purpose whatever, by any user and/or storer, including all subordinate governmental bodies, whether manufactured in this state or not, shall be inspected, under the general supervision of the inspector at large, before being sold or offered for sale or used and/or stored in this state.''

''6818. It shall be the duty of the inspectors to examine and test, within this state, all such volatile substances before being sold or offered for sale or used and/or stored in this state.''

Sections 6819 and 6820 deal with the methods of inspection and marking of receptacles containing the products inspected.

''6821. Each inspector who shall inspect any consignment of volatile substances described in the preceeding sections, as provided in this article, shall charge the consignor or consignee thereof the sum of twenty cents for testing a barrel, or less quantity, and twenty cents additional for each barrel. Fifty gallons shall constitute a barrel. When the inspection is made of a tank containing more than fifty gallons, twenty cents shall be charged for each fifty gallons or fraction over.''

''6822. Every inspector shall keep an accurate record of all such goods inspected, rejected, branded, or certified to by him, which record shall state the date of such inspection, the number of packages, barrels, casks, or tanks approved, the number rejected, the name of the person for whom inspected, the name of the person to whom consigned, with his address, the sum of money charged for such inspection; and such records shall be open to all persons interested.''

"6823. Each inspector shall, within twenty-five days after the end of each month, render to the comptroller of the state, through the inspector at large, an itemized report of all oils inspected by him, and shall at the same time remit to the comptroller, through the inspector at large, all moneys collected by him for inspection fees."

Chapter 8 of the Acts of the Second Extra Session of 1931 provides that the fees heretofore paid to the inspector shall be paid to the comptroller of the State, and that the inspector at large shall make reasonable regulations and supply the necessary blanks to facilitate the administration of the Act.

We may repeat now a trite observation of the courts that the nature of an imposition by government is not determined by what the legislature calls it. A property tax is none the less such because the legislature calls it a privilege tax, nor is an excise tax less such because the legislature calls it an inspection fee.

This court has long since recognized that the exaction here in question is in chief an excise tax and to a limited extent only an inspection charge. *State of Tennessee* v. *Reed Oil Co.*, 176 Tenn., 10, 137 S. W. (2d), 292; *State ex rel.* v. *Jackson*, 172 Tenn., 119, 110 S. W. (2d), 323. This is to say the statute assesses an excise tax on the sale, use or storage of these products measured by the number of barrels sold, used or stored. This as well as some charge for inspection.

The record before us shows that no inspection, as a matter of fact, was made of petroleum products stored and used by the defendant during the period for which it is herein sought to collect this charge. The defendant insists that inspection was a prerequisite to the collection of the imposition and, since no inspection was made, no liability on the part of defendant has accrued.

An Act of the Legislature may be referable both to the police power of the State and its taxing power. There seems to be no difficulty in apportioning the imposition here challenged as between inspection and revenue. It is stipulated by the parties that the cost of inspection of petroleum products received by defendant would have been only 1/30 of the total charge asserted.

Suppose employees of the State charged with that duty did fail to inspect, what then?

Shall the predominant purpose of the legislation be defeated because an inspector is remiss?

Shall the law fail as a revenue measure because a detail incident to its enforcement as a police measure is omitted?

Shall the seller, user, or storer of petroleum products be permitted to exercise that privilege without paying the tax assessed upon such privilege?

We think not.

The stipulation of facts upon which this case was tried shows that, under a regulation of the Department of Finance and Taxation, it was the duty of the person, firm or corporation receiving petroleum products to make an arrangement with the local inspector concerning notification of shipment, time of inspection, procuring of samples, etc. The stipulation further shows that defendant made no request for inspection nor attempted to make any arrangement for inspection. Indeed, letters from its general counsel filed in the record show that defendant has contended that this fee or tax was an unconstitutional imposition and has denied liability for the same for the whole period for which recovery is here sought, and prior thereto. It follows, therefore, that defendant is in no situation to complain of the failure to inspect these products. Having refused in advance to pay

the charge incident to such inspection, it was not wronged by lack of inspection.

Both the inspector and the defendant have been derelict. We do not think that their neglect made the excise tax assessed on defendant's storage and use of petroleum products any the less a debt due from the defendant to the State. In a case where the statute fixes the amount of the tax, the obligation to pay is not avoided by the failure of a tax officer to make an assessment. *Dollar Sav. Bank Co.* v. *United States,* 19 Wall., 227, 22 L. Ed., 80; *King* v. *United States,* 99 U. S., 229, 25 L. Ed., 373.

It is stipulated that the defendant made monthly reports to the fiscal officers of the State during the period involved in which the amount of petroleum products received and stored by it were set out, but did not accompany these reports with the remittance for the charge imposed by statute. Computation of the amount due from defendant was therefore not at all embarrassed by a failure of the inspector to inspect and report.

The defendant further insists, regardless of inspection, that the sections of the Code placing this imposition upon the sale, use and storage of petroleum products are unconstitutional in that liability for the charge arose, if at all, while said products were in interstate commerce, prior to the termination of the interstate movement and transportation, and that the exaction of the charge sued for would impose an unreasonable and unlawful burden on interstate commerce in violation of Article 1, Section 8, clause 3, of the Constitution of the United States.

This argument rests on a misinterpretation of the law. By express language of section 6817 of the Code, inspection, insofar as it measures the fee or tax, is re-

quired only on petroleum products "sold or used and/or stored in this state."

No charge is made in advance of, nor as a condition of, the preliminary examination and test prescribed in Code, section 6818, nor does the statute fairly construed exact any charge in respect to the volatile substances so examined and tested, except as to that portion sold, used or stored. An examination and test of petroleum products before unloading is not an undue burden on interstate commerce, if a commensurate charge only is made for the service. *Pure Oil Co.* v. *Minnesota*, 248 U. S., 158, 39 S. Ct., 35, 63 L. Ed., 180. An inspection, therefore, which involves no charge whatever on a consignment while remaining in interstate commerce is not objectionable.

There is nothing in the sections of the Code cited nor in subsequent legislation requiring payment of the fee or tax in advance of the removal of the contents of the tank cars in which the petroleum products are brought into the State. No such construction of these sections has ever been made by officials charged with the collection of this tax. On the contrary, it is stipulated herein that defendant was furnished forms by the Department of Finance and Taxation upon which defendant was expected to make a report each month of receipts of petroleum products by it during the preceding month and accompany said report with remittance of the imposition fixed by Code, section 6821. This suit is one to collect fees on such products as have been stored by defendant.

The facts in *Texas Co.* v. *Brown*, 258 U. S., 466, 42 S. Ct., 375, 379, 66 L. Ed., 721, relied on by defendant, are different from those here appearing. In that case request for inspection, accompanied by remittance for inspection fees, was made, and we take it exacted, before

the tank cars coming into the State of Georgia from other States were unloaded. It was held that the contents of the car might be subjected to a charge in excess of the cost of inspection after unloading, but that the State of Georgia could not "impose its power upon the products while yet in the tank car, but must resort to other means of collection, if need be." Manifestly the court meant that the State could not impose its power to tax while the products were in the tank car, for the court cited and approved *Pure Oil Co.* v. *Minnesota, supra,* in which it was held that the State could impose its power to inspect while the products were in the tank car. In the case before us, as heretofore seen, the State of Tennessee has not undertaken to impose its power to tax except upon such petroleum products brought in to defendant as have been stored and used by it. Defendant was asked to pay nothing until the end of the month during which the petroleum products had been stored by it and was then asked to pay only upon such petroleum products as had been stored by it.

We do not think that the Code sections quoted, as they have been uniformly construed and enforced by taxing officials of the State, impose any undue burden on interstate commerce in violation of the Federal Constitution.

Some criticism is made of reference by the State to the failure of defendant to make an arrangement for the inspection of petroleum products received by it. It is said that this failure was not mentioned in the bill filed by the State and accordingly that reference thereto was inadmissible. This, however, was one of the facts stipulated by the parties to which the court should look in deciding the case. Moreover, the matter is not material in view of the disposition we make of the controversy.

The State brought this suit in a court of equity, and, upon equitable principles, the defendant should not be charged for an inspection of petroleum products received by it, when no such inspection was ever made. As heretofore seen, the cost of inspection by the State would have been 1/30 of the amount for which this suit is brought. The chancellor's decree will accordingly be modified so as to render judgment in favor of the State for 29/30 of the recovery sought. The defendant will pay the costs.