HEYDEN CHEMICAL CORPORATION *v.* EVANS, COMMISSIONER OF FINANCE & TAXATION.

(*Nashville*, December Term, 1949.)

Opinion filed March 17, 1950.

Canada, Russell & Turner, of Memphis, for appellant.

Roy H. Beeler, Attorney General, William F. Barry, Solicitor General, and Harry Phillips, Assistant Attorney General, for appellee.

Mr. Justice Gailor delivered the opinion of the Court.

Complainant appeals from a decree of the Chancery Court of Davidson County, by which it was held that

Complainant, as a user of benzol in Tennessee, was liable for inspection fees imposed by Code Section 6817. The original bill was filed to recover such inspection fees in the sum of $280 paid under protest by the Complainant to the Defendant.

The case was heard by the Chancellor on the bill, the answer of the Defendant and a single deposition taken by the Complainant. The deposition is that of an engineer, C. J. Adams, who has been an employee of Complainant since 1943. From the original bill and that deposition it appears that Complainant Corporation is engaged in a manufacturing operation in Memphis; that it imports cars of benzol from outside Tennessee; that the chemical nature of this benzol brings it within the definition of the products set out in Code Sec. 6817, and that in Complainant's manufacturing process, the benzol is combined with chlorine gas to produce four other chemical products in the following amounts and proportions:

"Q. Assume that you place 100 pounds of benzol in process, what are the resultant products?

"A. 100 pounds of benzol reacted with 99.6 pounds of gaseous chlorine would result in the following quantities of products:

"123.3 pounds monochlorobenzene

"9.81 pounds paradichlorobenzene

"4.6 pounds of orthodichlorobenzene

"0.69 pounds trichlorobenzene."

These four products so manufactured are exported from Tennessee and sold in commerce outside the State.

After hearing the case and considering the pleadings and proof, the Chancellor found that the Complainant was liable for the inspection fees imposed by Code Sec.

6817, and from that decree, as stated, the Complainant has perfected his appeal, and makes the following three assignments of error:

1. The Chancellor erred in ruling that the appellant is a user of benzol within the meaning of Section 6817 of the Tennessee Code and therefore liable for inspection fees of twenty cents per barrel on benzol imported into the State of Tennessee.

2. The Chancellor erred in ruling that the appellant did not come within the statutory exemption provided for a refinery under Chapter 133, Public Acts of 1941, Section 1141.1 of Williams Tennessee Code.

3. The Chancellor erred in ruling that the appellant did not come within the provisions of Chapter 50, Public Acts of 1943, Section 6850.7 et seq. of Williams Tennessee Code, under the wording of which appellant would be liable for an inspection fee of only one-twentieth of one cent per gallon or two and one-half cents per barrel on benzol imported into the State of Tennessee and subsequently exported from the State of Tennessee.

The pertinent part of Code Sec. 6817, under the authority of which inspection fees were imposed and collected, is as follows:

"Inspection before sale.—All benzol, gasoline, burning oil, distillate, fuel oil, gas oil, kerosene, naphtha, and/or other volatile substances, reflecting a gravity of sixteen degrees or above on the Baume scale, produced from petroleum, natural gas, oil shales or coal, by whatever trade name known and/or substitutes therefor sold or used and/or stored in this state, separately or in combination for any purpose whatever, by any user and/or storer, whether manufactured in this state or not, shall be inspected, under the general supervision of the in-

spector at large, before being sold or used and/or stored in this state. . . ."

· The witness Adams admitted that the benzol imported by Complainant was within the specification and definition of this Code section. He further testified to the removal of the benzol from tank cars after its importation and its combination with chlorine gas. That this is a "use" of benzol within the sense of Code Sec. 6817, is for us an inescapable conclusion.

■ These inspection fees are both a police measure for public safety and a privilege tax on the use of benzol, *State* v. *Nashville C. & St. L. Ry.*, 176 Tenn. 24, 137 S. W. (2d) 297; *State* v. *Reed Oil Co.*, 176 Tenn. 10, 137 S. W. (2d) 292; *State ex rel. Fort* v. *City of Jackson,* 172 Tenn. 119, 110 S. W. (2d) 323, and both importers for sale and industrial users of benzol are liable for the fees, *State* v. *Nashville C. & St. L. Ry., supra,* whether the products manufactured by the industrial users be exported from the State or not, *Hamilton Nat'l. Bank v. McCanless*, 176 Tenn. 570, 144 S. W. (2d) 768; *Sealed Power Corp.* v. *Stokes,* 174 Tenn. 493, 127 S. W. (2d) 114; *Railroad Co.* v. *Harris,* 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921.

Unless, therefore, as insisted in the second and third assignments of error, Complainant is liable for inspection fees in a lesser amount under Code Sec. 6850.7, or is exempt under Code Sec. 1141.1, the decree of the Chancellor is clearly correct.

■ Code Sec. 6850.7 provides that when benzol of such chemical nature as that used here by Complainant, is "temporarily stored in Tennessee and subsequently exported to points outside the state", the inspection fees shall be not twenty cents per barrel under Code Sec. 6821, but one-twentieth of one cent per gallon under Code Sec.

6859.7. But this section applies only to such benzol as has been imported into Tennessee and temporarily stored there, and is thereafter, without change in its chemical nature or state, exported from Tennessee. This section has no application to benzol used as the Complainant uses it for manufacturing purposes in an operation whereby the chemical nature of the imported benzol is changed and manufactured products of a different chemical nature and definition are produced and thereafter exported.

Finally Code Sec. 1141.1 applies only to "petroleum refineries," and in four specified cases, exempts such refineries from the payment of inspection fees under Section 6817. We find that the Memphis factory of Complainant's is not a petroleum refinery in the sense of Code Sec. 1141.1, and reach this conclusion, (1) from this statement of Complainant's manufacturing operation as it was made in the original bill:

"The Heyden Chemical Corporation is engaged in the manufacture of various chemicals. The complainant operates a chemical plant at Memphis, Tennessee, where it produces various basic chemicals containing benzol. The complainant imports into the State of Tennessee, benzol, which is placed in process at complainant's plant, and exported from the State of Tennessee as monochlorobenzene, paradichlorobenzene, orthodichlorobenzene or trichlorobenzene."

And (2) from this testimony of Complainant's witness Adams:

"Q. But as the word—'oil refinery' is used by engineers, the manufacturing plant at Memphis is not an oil refinery, is it?

"A. The Heyden Chemical Corporation's plant at Memphis does not receive crude oil as a raw material and process it, and if the term 'refinery' is interpreted as meaning only a plant which processes crude oil, then the plant of the Heyden Chemical Corporation at Memphis is not a refinery in that sense."

It results that we find that the Chancellor was correct in holding that the Complainant was liable for the inspection fees charged under Code Sec. 6817, and his decree is affirmed.

All concur.