**SATURN CORPORATION**

v.

**Ruth JOHNSON, Commissioner of the Department of Revenue for the State of Tennessee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 13, 2006 Session.

Jan. 31, 2007.

Permission to Appeal Denied by Supreme Court June 18, 2007.

Robert E. Cooper, Jr., Attorney General and Reporter; and Brad H. Buchanan, Assistant Attorney General, for the Department of Revenue for the State of Tennessee.

Frank N. Stockdale Carney and Katharine A. Jungkind, Memphis, Tennessee; and James E. Gaylord and Paul D. Krivacka, Nashville, Tennessee, for the appellee, Saturn Corporation.

## OPINION

FRANK G. CLEMENT, Jr., J., delivered the opinion of the court, in which WILLIAM C. KOCH, Jr., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

The Department of Revenue appeals the Chancellor's ruling that the "surcharge" imposed on self-insured employers by Tenn.Code Ann. § 56–4–207(a) on deemed workers' compensation premiums is part of a premium tax for purposes of the tax credit provided pursuant to Tenn.Code Ann. § 56–4–217(a). The Department contends the surcharge is not a tax but a "fee" earmarked for the administration of the Tennessee Occupational Safety and Health Agency and may not be applied as a credit towards franchise and excise tax liabilities. Finding the surcharge to be a fee rather than a premium tax, we reverse.

The Saturn Corporation is a Delaware corporation with its principal place of business in Spring Hill, Maury County, Tennessee. Saturn is a self-insurer within the meaning of Tenn.Code Ann. § 56–4–207 with regard to workers' compensation claims. Accordingly, it is not insured by a licensed insurance company; instead, Saturn provides workers' compensation benefits to its employees equivalent to that provided by insurance companies.

As a self-insurer, Saturn is taxed in a parallel fashion to insurance companies that provide workers' compensation insur-

ance in Tennessee. *See* Tenn.Code Ann. § 56–4–201, *et seq.* Accordingly, Saturn pays *inter alia* four percent on the premium it would otherwise be paying if it carried workers' compensation insurance, plus Saturn pays a surcharge of four tenths of one percent on the deemed premium. *See* Tenn.Code Ann. § 56–4–206. By statute, the surcharge is earmarked to cover the costs associated with the administration of the Tennessee Occupational Safety and Health Act (TOSHA). *See* Tenn.Code Ann. § 56–4–207(a).

Prior to 2002, self-insurers were afforded a credit against their franchise and excise tax liability pursuant to Tenn.Code Ann. § 56–4–217 for "premium taxes" collected under Tenn.Code Ann. §§ 56–4–201 through 56–4–214. Saturn, believing that the surcharge of four tenths of one percent paid pursuant to Tenn.Code Ann. § 56–4–206 constituted a premium tax, requested a credit from the Department of Revenue against its franchise and excise taxes for fiscal years 1999 and 2000. The Department denied the claim, after which Saturn filed a Complaint pursuant to Tenn.Code Ann. § 67–1–1801 challenging the denial of its claim for the tax credit. The parties filed cross motions for summary judgment. The trial court ruled in favor of Saturn. The Department appeals.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn.2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1997).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v.*

*Hall*, 847 S.W.2d 208, 210 (Tenn.1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn.Ct.App.2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. In this matter there are no material facts in dispute. The issue before us involves the interpretation of a statute, the construction of which is a question of law. The standard of review for questions of law is the de novo standard. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn.2000).

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn.Ct.App.2002). Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn.2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn.1995)). To determine legislative intent, we must look to the natural and ordinary meaning of the language in the statute. We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn.2000); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 867 (Tenn.Ct. App.2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991).

We are to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn.1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn.Ct.App.1998). We

must also presume the General Assembly selected their words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metro. Gov't.,* 798 S.W.2d 254, 257 (Tenn.Ct.App. 1990), and the use of their words conveys some intent and carries meaning and purpose. *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn.1984); *Clark v. Crow,* 37 S.W.3d 919, 922 (Tenn.Ct.App. 2000).

### ANALYSIS

Every insurance company writing workers' compensation insurance pursuant to Tenn.Code Ann. § 50–6–101 *et seq.,* known as the Workers' Compensation Law, is required to pay "a tax of four percent (4%) on gross premiums collected for workers' compensation insurance, plus a surcharge of four tenths of one percent (.4%) on gross premiums...."[1] Tenn.Code Ann. § 56–4–206. Pursuant to the statute, the "surcharge" of four tenths of one percent is "earmarked for the administration of the Tennessee Occupational Safety and Health Act, ..." Tenn.Code Ann. § 56–4–206.

Saturn, which is an employer that carries its own workers' compensation insurance as provided in Tenn.Code Ann. § 50–6–101 *et seq.,* is required to pay four percent on the premium it would have been required to pay if it carried full coverage insurance through a licensed insurance company. Tenn.Code Ann. § 56–4–207. The statute provides:

> If any employer covered by provisions of title 50, chapter 6, known as the Workers' Compensation Law, or any amendatory acts thereto, shall carry its own insurance as provided by that chapter, such employer shall pay to the commissioner four percent (4%) on the premium which the employer would be required to pay if the employer carried the full coverage insurance called for with licensed insurance companies; provided, that the tax so paid by any employer shall in no instance be less than five dollars ($5.00), and a surcharge of four tenths of one percent (.4%) on such premium the employer would have been required to pay, such surcharge to be earmarked for the administration of the Tennessee Occupational Safety and Health Act, compiled in title 50, chapter 3. The tax shall be paid by such self-insurers to the commissioner on or before June 30 of each year. Any company or corporation electing to operate as a self-insurer and having been duly qualified as such subsequent to June 30 of any year shall pay the tax based on the estimated payroll for the balance of the year when the permit is issued; provided, that the surcharge of four tenths of one percent (.4%) on the tax on workers' compensation insurance premiums levied by the provisions of this section shall not apply to any employer who employs ten (10) or less employees unless such employer is in the business of construction or manufacturing.

Tenn.Code Ann. § 56–4–207(a).[2]

The dispute at issue arises under the application of the foregoing statute and the credit afforded by Tenn.Code Ann. § 56–4–217 against the franchise and excise taxes. The credit applies as follows:

> The amount of the premium taxes collected under the provisions of §§ 56–4–

---

[1] The statute further provides that the tax shall be paid "at the same time and in the same manner as the tax levied upon insurance companies by § 56–4–205; provided, that the surcharge of four tenths of one percent (.4%) on the tax on workers' compensation insurance premiums levied by the provisions of this section does not apply to any employer who employs ten (10) or less employees unless such employer is in the business of construction or manufacturing." Tenn.Code Ann. § 56–4–206.

[2] The provisions of Tenn.Code Ann. § 56–4–207 do not apply to county or municipal gov-

201–56–4–214 shall be a single credit against the sum total of the taxes imposed by the Franchise Tax Law, compiled in title 67, chapter 4, part 21, and by the Excise Tax Law, compiled in title 67, chapter 4, part 20.

Tenn.Code Ann. § 56–4–217(a). The statute went on to provide that to the extent any franchise or excise tax liability remained after application of the credit in Tenn.Code Ann. § 56–4–217(a), the tax liability would be reduced by the applicable percentage as follows:

> (1) For tax years beginning on or after December 15, 1998, but not after December 14, 1999, the remaining liability after application of the credit shall be reduced by twenty percent (20%).
>
> (2) For tax years beginning on or after December 15, 1999, but not after December 14, 2000, the remaining liability after application of the credit shall be reduced by forty percent (40%).
>
> (3) For tax years beginning on or after December 15, 2000, but not after December 14, 2001, the remaining liability after application of the credit shall be reduced by sixty percent (60%).
>
> (4) For tax years beginning on or after December 15, 2001, but not after December 14, 2002, the remaining liability after application of the credit shall be reduced by eighty percent (80%).

Tenn.Code Ann. § 56–4–217(b).

■ Saturn argues it is entitled to a credit for the surcharge of four tenths of one percent it paid in 1999 and 2000 pursuant to Tenn.Code Ann. § 56–4–207(a), contending the "surcharge" constitutes a "premium tax" within the meaning of Tenn.

Code Ann. 56–4–217(a). The Department counters, contending the surcharge of four tenths of one percent is not a premium tax but a "fee." The Department contends it is a fee, not a tax, because the surcharge is "earmarked" for the administration of TO-SHA and it does not go into the general treasury.

■ "[T]he nature of an imposition by government is not determined by what the legislature calls it." *State v. Nashville, C. & St. L. Ry.*, 176 Tenn. 24, 137 S.W.2d 297, 299 (Tenn.1940). The distinction between fees and taxes, thus, lies not in the name given in the relevant statute, but rather in the purpose of the monetary imposition. In determining whether the surcharge in Tenn.Code Ann. § 56–4–207(a) is a fee or a tax, we must look to whether it is or is not "paid into the general public treasury and disbursable for general public expenses." *Memphis Natural Gas Co. v. McCanless*, 183 Tenn. 635, 194 S.W.2d 476, 483 (Tenn. 1946).

■ If the surcharge is paid into the public treasury as part of the state's general revenue and disbursed for general public need, it is a tax. *See Memphis Fire Ins. Co. v. Tidwell*, 495 S.W.2d 198, 200 (Tenn.1973) (citing *Memphis Natural Gas Co.*, 194 S.W.2d at 483). If, however, the surcharge "is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the [surcharge]," it is a fee. *Gray's Disposal Co., Inc. v. Metro. Gov't*, 122 S.W.3d 148, 159 (Tenn.Ct.App. 2002) (citing *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn.1997)).

The Supreme Court of Tennessee distinguished fees from taxes in *Memphis Fire Ins. Co. v. Tidwell* wherein the Court analyzed the precise nature of the statutorily imposed Fire Marshal's tax. *Memphis Fire*, 495 S.W.2d at 199. The statute re-

ernments. *See* Tenn.Code Ann. § 56–4– 207(b).

ferred to all payments required under the Fire Marshal's tax as a tax, but the Supreme Court determined the payments were fees. *Id.* at 200. The Court rested its conclusion on the fact that the funds were specifically earmarked for the execution of the Fire Marshal Law. *Id.*

The Tennessee Supreme Court identified the applicable test for determining whether a charge imposed by the government is a tax or a fee in *City of Tullahoma v. Bedford County,* 938 S.W.2d 408 (Tenn. 1997).

> Whether the charge for depositing waste in a landfill is a tax or a fee, even though denominated a tax, is determined by its purpose. A tax is a revenue raising measure levied for the purpose of paying the government's general debts and liabilities. (internal citations omitted). A fee is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee.

*Id.* at 412.

This Court applied the *City of Tullahoma* test in *Gray's Disposal,* wherein we found that the waste disposal "tipping fees" imposed by the Metropolitan Government of Nashville, Davidson County were fees rather than taxes.

> As stated, the dispositive factor in determining whether a charge is a tax or a fee is the purpose for which the charge is imposed. Consideration of whether payment of the tax is voluntary or involuntary is irrelevant. T.C.A. § 68–211–835(b) states that "[r]evenue from tipping fees at publicly owned solid waste disposal facilities and incinerators received by counties, municipalities and solid waste authorities shall be expended only for solid waste management purposes." Metro submitted the affidavits of Billy Davis and Gene Nolan as evidence of Metro's compliance with T.C.A. § 68–211–835(b). Both affiants testified that all of the tipping fees received by Public Works were placed in the Solid Waste Disposal Fund to cover the cost of solid waste disposal in Davidson County. Davis and Nolan further stated that these fees were necessary as tax revenues in Davidson County alone are insufficient to finance the cost of garbage disposal. Appellants do not dispute the fact that the fees were correctly deposited in and applied from the Solid Waste Disposal Fund, and even stated in their response opposing Metro's Motion for Summary Judgment that they agreed that the taxes and fees were used and applied according to the statute.

*Gray's Disposal Co.,* 122 S.W.3d at 159.

The statutory "surcharge" of four tenths of one percent at issue here is expressly "earmarked for the administration of the Tennessee Occupational Safety and Health Act, compiled in title 50, chapter 3." Tenn. Code Ann. § 56–4–207(a). Thus, there is no ambiguity in the legislature's intent that the monies raised by the surcharge are earmarked for the administration of TOSHA. The foregoing notwithstanding, Saturn contends that TOSHA exists for the general welfare of the public; therefore, monies paid for the administration of TOSHA are being used to benefit the general public and, thus, are taxes, not fees.

The stated purpose of TOSHA is to "assure so far as possible every working man and woman in the state of Tennessee safe and healthful working conditions. . . ." Tenn.Code Ann. § 50–3–102(b). TOSHA benefits the public workforce by instituting mandates for workplace safety, and therefore is for the public benefit. The public benefit, however, does not make the sum paid a tax as the Court in *Memphis Fire* explained. The Fire Marshall law was for the benefit of the general public, yet the Supreme Court concluded that although the general public benefitted from the in-

vestigation and prevention of property-destroying fires, no one benefited as much as the writers of fire insurance. Applying that analysis here, writers of workers' compensation insurance policies and self-insurers, like Saturn, benefit in the same fashion from TOSHA.

Here, the surcharge is earmarked for the administration of TOSHA, and TOSHA provides a greater benefit to the writers of workers' compensation insurance and self-insurers than anyone else. Therefore, based on the test in *City of Tullahoma* and the reasoning in *Memphis Fire* and *Gray's Disposal,* we conclude that the surcharge earmarked for the administration of TOSHA is a fee.[3]

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against appellee, the Saturn Corporation.

---

**3.** Having found that the surcharge is a fee rather than a tax, we need not discuss the differences between "taxes" and "premium taxes," which issue was raised by the parties.